**John BATTERTON, et al.,
Plaintiffs-Appellants,**

**v.**

**The TEXAS GENERAL LAND OFFICE,
et al., Defendants-Appellees.**

**No. 84–1961.**

United States Court of Appeals,
Fifth Circuit.

March 3, 1986.

Rehearing Denied May 12, 1986.

---

Connie Ode, Bunton, Nolan, Ode & Cooper, Margaret A. Cooper, Austin, Tex., for plaintiffs-appellants.

F. Scott McCown, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before GEE, RUBIN and DAVIS, Circuit Judges.

GEE, Circuit Judge:

Today's case requires us to decide whether the dismissal of four employees of the Texas General Land Office (GLO) violated their constitutional rights. The appellant employees maintain that a Texas statute grants them a property interest in their jobs or, in the alternative, that informal practices within the department do so, as well as that their discharges violated first amendment rights. The trial court entered summary judgment against them, and we affirm.

Appellants were employees of the GLO in January 1983, when appellee Garry Mauro took office as Land Commissioner. Claiming a need for reorganization, Mauro moved swiftly to dismiss employees, discharging the four appellants as of the end of May 1983. Shortly afterwards, they brought a 42 U.S.C. § 1983 action against Mauro and the GLO (hereinafter referred to collectively as Mauro). The original complaint asserted a reasonable expectation of continued employment so long as they satisfactorily performed their duties and that consequently Mauro violated their procedural due process rights by dismissing them without satisfactory cause or a fair hearing. When Mauro moved for summary judgment in July 1984, the employees amended their complaint to add a nebulous first amendment claim—unavailingly, in the event, as the district court entered summary judgment against them on the entire case in September 1984. *See Batterton v. Texas General Land Office,* 593 F.Supp. 372 (W.D.Texas 1984). The employees appeal.

In reviewing the appeal, we first note the conceptual difference between the due process and the first amendment claims. As the Supreme Court has made clear, the two are distinct:

> ... [E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a

basis that infringes his constitutionally protected interests—especially his interest in freedom of speech.

*Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). Separate consideration of the two claims is therefore appropriate.

## THE DUE PROCESS CLAIM

■ The employees assert a property interest in their jobs, invoking the line of Supreme Court cases that began with *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Sindermann.* Considering a teacher's asserted right of continued employment, the *Roth* court refused to base the concept of property on an employee's mere expectation; "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must have a legitimate claim of entitlement to it." 408 U.S. 577, 92 S.Ct. 2709. The due process clause can protect a public employee, however, should state law provide the basis of an employee's legitimate claim to entitlement:

> ... [Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Id; see also Bishop v. Wood,* 426 U.S. 341, 344–45, 96 S.Ct. 2074, 2077–78, 48 L.Ed.2d 684 (1976). If a property interest exists, procedural due process then accords such rights as those to notice and a hearing before the employee may be fired. We must first see, therefore, whether Texas law provides GLO employees with any legitimate claim of entitlement to their jobs.

■ The district court accurately labeled § 31.020, Texas Natural Resources Code, as "the center of the maelstrom." 593 F.Supp. at 373. Dealing with the conditions of employment for GLO employees, § 31.020 provides:

(b) Clerks and employees of the land office shall hold their offices and positions at the pleasure of the commissioner and may be removed by him at any time for satisfactory cause.

Although the parties advance differing interpretations of this provision, the simple truth is that neither we nor anyone else can tell with any real assurance what it was that the Texas legislature intended when it originally enacted this statute over a century ago, in 1879. Obvious ambiguity results from the provision's contradictory phrases: On the one hand, one who holds his jobs "at the pleasure of the commissioner" sounds a great deal like an at-will employee; on the other, dismissal "for satisfactory cause" seems to restrict the commissioner's ability to fire his employees to discharges for cause. We have found no Texas case interpreting the quoted provision, nor does any legislative history exist.

Texas common law, however, provides rules of statutory interpretation, rules that we shall consider in construing § 31.020. Our reference to these is not mandated by *Erie RR Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny; subject-matter jurisdiction today is based on a federal question, not on diversity of citizenship. Reason dictates, however, that in deriving a meaning from the statute's words we should approach them exactly as would a Texas court, since had we discovered an authoritative interpretation by such a court we would have adopted it and since, should any come later, it will of necessity supersede ours. It would make little sense for us to proceed to an aberrant construction by refusing to apply state canons, canons which will in all probability govern any authoritative construction which the statute ever receives. Turning to these, we find them dispositive.

In *Stanford v. Butler,* 142 Tex. 692, 699–702, 181 S.W.2d 269, 273–74 (1944), the court held that if an ambiguous statute "has been construed by executive officers of the state charged with its execution, and it has subsequently been re-enacted without substantial change in language, it will

continue to receive the same construction." Because § 31.020 has been re-enacted several times, most recently in a 1977 codification, evidence of past commissioners' interpretations becomes crucial. Appellees submitted affidavits of three former chief clerks of the GLO in support of their summary judgment motion. These men, whose combined years of service stretched from 1940 to 1983, all swore that the commissioners under whom they had served uniformly interpreted § 31.020 as granting them the power to fire any employee for any reason. The employees presented no evidence contradicting these affidavits; and while they point to an office policy manual and to current customs, none of these predates the 1977 codification of the statute. *Stanford* therefore teaches us that the 1977 codification of § 31.020 transformed the commissioners' existing interpretation of the statute into law, and that GLO employees can be fired for any reason.

We note that while even standing alone *Stanford* would mandate this conclusion, other rules bolster its force. Texas law, for example, would regard the ambiguity of § 31.020 as requiring an interpretation favorable to the GLO:

> [L]egislative grants of property, rights or privileges must be construed in favor of the state on grounds of public policy and whatever is not unequivocally granted in clear and explicit terms is withheld. Any ambiguity or obscurity in terms of the statute must operate in favor of the state.

*State v. Standard,* 414 S.W.2d 148, 153 (1967), *quoting Empire Gas & Fuel Co. v. State,* 121 Tex. 138, 157–59, 47 S.W.2d 265, 272 (1932). Those unpersuaded by the authority of *Stanford* would therefore confront further obstacles to any contrary result.

Our interpretation complete, we must now acknowledge that the letter of state law alone is not necessarily determinative. In *Roth,* the Court held that property interests "are created and their dimensions are defined by existing rules *or understandings* that stem from ... state law." 408 U.S. at 577, 92 S.Ct. at 2709. (emphasis added); *see also Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (teacher can have property interest in his job even absent formal contractual tenure provision if an informal understanding with the college administration existed). We have taken our cue from these cases to recognize that a property right might be based on "mutually explicit understandings." *See, e.g., Wells v. Hico Independent School District,* 736 F.2d 243, 252 (5th Cir.1984), *cert. dismissed* —— U.S. ——, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985), *quoting Sindermann,* 408 U.S. at 601, 92 S.Ct. at 2699. In today's case, the employees introduced affidavits and depositions asserting that GLO practice during their period of employment (from about 1978 to 1983) was to provide adequate notice of planned dismissal and the opportunity to improve one's performance. On appeal, they argue that this practice sufficed to create a legitimate claim of entitlement protected by the fourteenth amendment.

Once § 31.020 is construed as establishing at-will employment, however, cases such as *Sindermann* became readily distinguishable from today's. They are all cases in which no statute resolved whether a property interest in one's job existed. The Supreme Court's holding that an informal understanding may lead to a property interest must therefore be recognized as standing in the absence of an officially promulgated position, one way or the other, on the issue of a teacher's tenure. Here, we have interpreted § 31.020 as establishing a clear and official stand; having done so, we conclude that informal understandings and customs contrary, and subsequent, to the enactment of that statute cannot be the source of an employee's property interest. We reiterate the language of *Roth* that understandings and customs must "stem from ... state law."[1] 408

---

**1.** Like *Sindermann, Roth* was a case in which no statute was involved. The general scope of

its language, however, appears applicable even in cases such as this, in which a statute is the

U.S. at 577, 92 S.Ct. at 2709. To say that customs entirely contrary to a statute's meaning may stem from that statute would defy reason; only if consistent with official law may such practices create a property interest in one's job.

Our holding finds support in *Hico Independent School District.* We there ruled that the school district's custom of providing certain grievance and evaluation procedures could not create property interests in the face of Texas law that failed to provide any basis for a claim of entitlement. *See* 736 F.2d at 252–54. Nor are we alone in recognizing such a rule. In *Baden v. Koch,* 638 F.2d 486 (2nd Cir.1980), for example, considering the assertion that an informal understanding between the mayor of New York and the city's chief medical examiner prevented the mayor from exercising his statutory authority to fire the examiner at will, the Second Circuit held that a mutual understanding cannot create a property interest contrary to state law. *See id.* at 492–93.

Despite the factual dispute over GLO's practices after 1977, summary judgment was appropriate. Events occurring after 1977 are immaterial in determining whether a constitutional violation occurred. This being so, only the resolution of a legal issue—what § 31.020 means—was required. The district court's interpretation of the provision was proper; we therefore affirm summary judgment as to the employee's claim of a due process violation.

### THE FIRST AMENDMENT CLAIM

The employees also contend that the district court improperly entered summary judgment on the entire case because the appellees failed to rebut their first amendment claim. Our review begins with a chronicle of the rather complex procedural history preceding the court's summary judgment order. The employees' original complaint did not contain a first amendment claim. On July 11, 1984, both sides filed motions for summary judgment. Three weeks later, the employees filed an amended complaint containing the first ref-

erence to their first amendment rights: an assertion that these were violated because Commissioner Mauro fired the plaintiffs to free positions for his political supporters. After this filing, the appellees continued to press for summary judgment on the entire case, without specific reference to the new claim. In response, the employees neither mentioned the claim again nor presented matter supporting it. At a summary judgment hearing held on September 7, 1984, the first amendment allegation was ignored by both sides. After the district court's entry of summary judgment in the appellees' favor, however, the employees filed a motion to alter or amend judgment, noting the existence of the first amendment claim. Appellees retorted that the employees had waived this claim, and the motion to alter or amend was denied.

Under Fed.R.Civ.P. 56(a) and (b), a party may move for summary judgment without affidavits or other supporting evidence. Should he submit such material, however, Rule 56(e) imposes upon the other party the duty to present factual matter in his defense:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits and as otherwise provided on this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The district court believed that the employees were required to present specific facts supporting the first amendment claim to avoid summary judgment. The employees now argue that this belief improperly burdened them with the duty to present specifics. In so arguing, they assume the appellees' failure to address first amendment claim, but while the appellees never referred to the claim explicitly, some of their evidence rebuts the claim. Appellee Mauro asserted in both a deposition and an affidavit that the dismissals stemmed from his

focus of the determination whether due process is owed.

honest effort to streamline the GLO, and his statements are bolstered by the affidavits of non-party officials of the GLO and by other documentation. The employees, on the other hand, failed to support their claim except with the following bald and conclusory assertion:

> [T]he purported reorganization of the General Land Office was in fact a pretextual afterthought to justify dismissals in order that Garry Mauro might extend political patronage to friends and supporters by removing existing career employees from the General Land Office in order to free budget funds to pay substantial salaries for those persons he wished to install in positions in the Land Office.

This pronouncement appears, word for word, in the affidavits of three of the appellant employees, but, unsupported by details or other evidence, it does little more than clarify the nebulous first amendment claim in the amended complaint.

The employees' failure to come forward with specifics recalls the decision in *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir.1983). There, appellant Nicolet, Inc. filed a complaint alleging alter ego liability, successorship liability, and contribution or indemnity as three alternative theories of appellee Turner & Newall, Ltd.'s liability. The subsequent procedural disposition of its claim is similar to that here:

> Although the district court's memorandum opinion supporting the grant of summary judgment for T & N discussed only the alter ego liability issue, the order granting summary judgment purported to dispose of Nicolet's entire case against T & N.... Our review of the record indicates that Nicolet failed to set forth specific facts raising a genuine triable issue on its theories of successorship liability and contribution or indemnity. Although the complaint refers to both of these grounds of recovery, Nicolet never broached them again until this appeal. Neither Nicolet's brief in opposition to T & N's motion for summary judgment nor its comments at oral argument on the summary judgment motion mentioned a single fact that would trigger a genuine issue on these theories. *Id.* at 1163–64.

Acknowledging the drastic nature of summary judgment, we nevertheless affirmed its entry in *Hargrave* because of Nicolet's failure to demonstrate an actual dispute over material facts.

*Hargrave* supports affirmance here. While it is true that the employees reminded the district court of the first amendment claim in their motion to alter or amend judgment (thereby distinguishing today's case from *Hargrave*), the court was under no duty to grant that motion. A district court's decision to deny a motion to alter or amend judgment may be reviewed only for an abuse of discretion. *See Weems v. McCloud*, 619 F.2d 1081, 1098 (5th Cir. 1980). To regard the district court's decision as improper would only be to reward the employees' lack of diligence. They had enough time before the summary judgment hearing to unearth any helpful evidence, yet failed to produce anything beyond unembellished assertions that properly belong in a well-pled complaint. We therefore decline to fashion for them any excuse for their failure to comply with the clear requirements of Rule 56(e).

The district court's order of summary judgment is accordingly

AFFIRMED.