James A. WARREN, Plaintiff–Appellant,

v.

Dave CRAWFORD, et al.,
Defendants–Appellees.

No. 90–8677.

United States Court of Appeals,
Eleventh Circuit.

March 26, 1991.

Amy Totenberg, Atlanta, Ga., Wade M. Crumbley, Crumbley & Crumbley, McDonough, Ga., for plaintiff-appellant.

Michael A. O'Quinn, Smith & Welch, McDonough, Ga., for defendants-appellees.

Before FAY and JOHNSON, Circuit Judges, and PECK *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Plaintiff James A. Warren appeals the district court's summary judgment denying his claim that he had been illegally terminated from his position as head of the Henry County, Georgia, Department of Transportation ("the DOT").

## I. STATEMENT OF THE CASE

### A. *Background Facts*

In September of 1985, Warren accepted a position as Road Superintendent for Henry County. When he was hired, Warren received a copy of the Personnel Handbook,[1] which he believed established a probationary period of one year, during which he could be terminated at will. After completing the probationary period, Warren believed that he could only be fired for cause.

During the fall of 1988, several candidates in the upcoming elections for the Board of Commissioners of Henry County ("the Board") made the efficiency of the DOT a campaign issue. Defendants Crawford, Honea, and Joyner were elected to the Board in November of 1988.

The defendant Board assumed office in January of 1989. In early 1989, defendants Crawford, Honea, and Joyner inspected the DOT's office. The inspection purportedly lasted for fifteen minutes. Defendant Crawford testified that they found the shop area of the DOT in disarray. Defendant Joyner testified that he and defendant Honea subsequently returned to the DOT offices for a second inspection and found things worse instead of better. Warren testified that the Board made no complaints to him personally about his job performance as a result of these inspections. Defendant Joyner testified, however, that he related his complaints to County Administrator Don Norton, who was Warren's supervisor.

On March 15, 1989, the Board held a specially scheduled meeting to consider reorganizing the DOT. During the meeting, the Board retired into executive session in order to discuss the job performance of Warren.[2] During the executive session,

---

* Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. This handbook represented a compilation of the Personnel System Ordinance and its amendments, which the Board passed in November of 1980.

2. Under the Georgia Open Meeting Act, Ga.Code Ann. § 50–14–1 *et seq.*, Board meetings must be public. Ga.Code Ann. § 50–14–3(6) allows a closed meeting, however, when discussing the

the Board discussed the DOT's deficiencies, *e.g.*, damage to two trash compactors, poor maintenance of equipment, lack of efficiency in road repair, decreased productivity in paving roads, and the disarray of the DOT shop. Defendants Joyner and Crawford both expressed their opinion that the DOT was not providing service commensurate with its share of the county budget.

The Board then reconvened in public session, and Commissioner Joyner proposed a reorganization plan for the DOT in order to improve efficiency. This plan divided the DOT into two separate departments. The shop and landfill functions became a separate department of services, and the preexisting engineering department was consolidated with the remaining sections of the DOT under the supervision of the County Engineer. The stated goal of the reorganization was to improve efficiency by reducing the number of employees under the supervision of DOT and by combining the road designing functions of the County Engineer with the road maintenance functions of the DOT. Thus, under the reorganization, all county activities associated with roads, including design, construction and maintenance, were under a single department headed by the County Engineer. Warren's job as head of the DOT was the only job eliminated by the reorganization.

At the meeting, the County Administrator[3] requested an additional thirty days to study the reorganization. He stated that by making specific personnel changes the reorganization crossed the boundary between his role and the Board's and undermined his authority. According to the minutes, defendant Crawford stated that he believed the reorganization was a policy decision, not a personnel decision. The Board, with one abstention and one dissent, then voted to adopt the plan immediately.

### B. *Procedural History*

On April 5, 1989, Warren filed a complaint in state court, alleging that the Board had violated his procedural due process rights by terminating his employment as head of the DOT without notice and a hearing and that the reorganization violated the state's open meeting law. Warren asked that the state court enjoin the Board from terminating him until such time as they afforded him notice and a hearing and that he receive damages for wrongful termination.

After the case was removed to federal court, Warren amended his complaint to add two additional federal claims. He asserted that he had been dismissed arbitrarily, capriciously, and by pretextual means in violation of his substantive due process rights. Warren also asserted a Fourteenth Amendment liberty interest claim based on the defendants' publication of allegedly false and stigmatizing statements regarding Warren's supposedly unprofessional management of the DOT and their failure to provide Warren with a "name clearing" hearing.

After discovery, the parties filed cross motions for summary judgment. On June 15, 1990, the district court denied Warren's motion for summary judgment and granted the defendants' motion for summary judgment. The court declined to exercise pendant jurisdiction over the state law claims. Warren appeals these rulings.

### II. ANALYSIS

 This Court reviews *de novo* a district court's order granting a motion for summary judgment. *Ordway v. United States*, 908 F.2d 890, 893 (11th Cir.1990). We must determine whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). All evidence and rea-

---

performance of an employee. A transcript of this Executive Session was admitted into evidence.

**3.** The County Administrator is the head of the administrative branch of county government, acting as the personnel director with the power to hire and fire most county employees. The Administrator is appointed by the Board and serves at their pleasure. Mr. Warren testified that he considered the County Administrator his boss.

sonable factual inferences drawn therefrom are reviewed in the light most favorable to the party opposing the motion. *Hinesville Bank v. Pony Express Courier Corp.*, 868 F.2d 1532, 1535 (11th Cir.1989).

### A. *Due Process*

■ The Fourteenth Amendment protects against the government's deprivation of liberty or property without procedural due process. *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). State law determines whether a public employee has a property interest in his or her job. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976); *Barnett v. Housing Auth. of Atlanta,* 707 F.2d 1571, 1576 (11th Cir.1983). A constitutionally protected property interest is created if there are "rules or mutually explicit understandings that support [a] claim of entitlement." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). To obtain a protected property interest in employment, a person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of entitlement to continued employment. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Under Georgia law, in the absence of a controlling contract between the parties, employment for an indefinite period is terminable at will by either party. *Land v. Delta Air Lines,* 130 Ga.App. 231, 203 S.E.2d 316 (1973); *see also* Ga.Code Ann. § 34–7–1 (1988). Moreover, a public employee generally has no property right in such employment. *Ogletree v. Chester,* 682 F.2d 1366, 1369 (11th Cir.1982) (citing *Barnes v. Mendonsa,* 110 Ga.App. 464, 138 S.E.2d 914, 915 (1964)). A public employee who may be terminated only for cause, however, has a protected property interest in continued employment. *Barnett,* 707 F.2d at 1576; *Brownlee v. Williams,* 233

Ga. 548, 212 S.E.2d 359, 362 (1975). Thus, to evaluate the validity of Warren's due process claims, we must first determine whether he has a protected property interest in his employment as head of the DOT.

■ Warren argues that the Personnel Handbook he received when he was hired states that he could be dismissed only for cause and only after a hearing. He therefore claims that he had a protected property interest in his position as head of the DOT. In the alternative, Warren argues that the Personnel Handbook stated that the County Administrator could dismiss him only when the Administrator had determined that his termination was in the best interest of the County and only after he had received notice and a hearing. Warren also claims that the Board usurped the Administrator's authority by dismissing him. He therefore argues that the Board violated his procedural due process rights by dismissing him without notice or a hearing.

The defendants contend that they have not dismissed Warren. Rather, they argue that his position was eliminated as part of the reorganization of the DOT. They claim that the Board was acting within its authority under 1974 Ga.Laws 3680 ("the 1974 Act") in executing the reorganization.[4] More importantly, the defendants argue that the Personnel Handbook did not grant Warren a property interest in his employment because Warren could be fired at the County Administrator's discretion. They therefore argue that Warren has no due process rights.

The district court observed that while the Personnel Handbook defined dismissal as "a separation for definable cause" it also stated that department heads may be removed by the County Administrator "when, in his [the Administrator's] judg-

---

**4.** The 1974 Act states in part:

 **Section 1.** The Board of Commissioners of Henry County shall be the governing authority of Henry County and shall be vested with the control and management of the affairs of said county. Said Board shall exercise all of the powers, duties and responsibilities hereinafter provided for ...

 **Section 16.** It shall be the duty of the Board to maintain the public roads of the entire county. Said Board shall have the authority to hire a superintendent of roads and such other persons as may be necessary for the proper working of the roads and building of bridges and keeping the same in repair, and to pay the same out of county funds.

ment, it is in the best interest of the County." After reading the Personnel Handbook in its entirety, the court concluded that the Handbook was not intended to cover Warren's position as head of the DOT.[5] The court therefore found that the Personnel Manual did not grant Warren a protected property interest in his position as department head.[6]

As the district court noted, the Personnel Handbook states both that a "dismissal is a separation made for definable cause", and that the County Administrator may dismiss "department heads when, in his judgment, it is in the best interests of the County." Georgia courts have held that "a limited or specific provision will prevail over one that is more broadly inclusive." *Hearn v. Old Dominion Freight Lines,* 172 Ga.App. 658, 324 S.E.2d 517, 518 (1984). Accordingly, we must determine whether the "best interests of the County" language grants Warren a protected property interest in his job.

This Court has held that an ordinance which provided that an employee "shall serve during good behavior and efficient service, to be judged by the commissioner or a designee" created no property right for the employee. *Edwards v. Brown,* 699 F.2d 1073, 1077 (11th Cir.1983); *see also Wofford v. Glenn Brunswick Memorial Hosp.,* 864 F.2d 117 (11th Cir.1989) (per curiam) (holding internal personnel policies do not give an at-will employee a property

interest in a job). In *Edwards,* this Court concluded that because the ordinance at issue placed no limit on the commissioner's discretion to determine whether an employee had fulfilled the standards of "good behavior and efficient service" it created no protected property interest.[7] Thus, *Edwards* supports the Board's argument that the Personnel Handbook created no property interest for department heads because they may be dismissed at the discretion of the Administrator. This conclusion is further bolstered when the Personnel Handbook is read in its entirety. *See Glenn v. Newman,* 614 F.2d 467, 471 (5th Cir.1980).[8] The Handbook makes numerous distinctions between department heads and rank and file employees, *e.g.,* department heads are given the authority to evaluate rank and file employees, to grant raises, and to hear appeals from employees facing detrimental job actions. These distinctions support the conclusion that the Board intended to grant a property interest to rank and file employees but not to department heads when it passed the personnel ordinances which make up the Handbook.

Warren argues that the Board's past actions with regard to the Personnel Handbook created a mutual understanding granting him a property right in his employment. *See Perry,* 408 U.S. at 602, 92 S.Ct. at 2700 (holding that the meaning of a promisor's words may be found from past usage). In particular, he points to the fact

5. Both parties agree that Mr. Warren, as Road Superintendent, was a department head.

6. Furthermore, the court noted that the Personnel Handbook covered only those positions over which the County Administrator had appointment authority. The court held that while the Board had delegated some of its appointment authority to the Administrator, there was no indication that the Board had renounced its own power in this area.

7. Mr. Warren's argument relies heavily on *Brown v. Georgia Dept. of Revenue,* 881 F.2d 1018 (11th Cir.1989). *Brown* is not dispositive of the instant case. In *Brown,* the plaintiff claimed that the Georgia State Merit Systems Act ("the Merit Act") granted state employees a property interest in their employment, notwithstanding a disclaimer stating that the Merit Act "is not intended to create a property interest in

the job." *Id.* at 1024. This Court held that the Merit Act's provision providing that state employees could only be terminated for a specified list of reasons was equivalent to dismissal for cause and therefore ruled that the Merit Act granted a protected property interest in employment. *Id.* at 1028. In the instant case, the Personnel Handbook placed no limit on the Administrator's discretion to determine whether dismissal of a department head was in the best interest of the County. There are no guidelines, reasons, or "causes" that the Administrator must find before determining that the dismissal of a department head is the best interest of the County.

8. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

that two former department heads had been given written notice and a hearing in front of the Board before termination.

The Board's past actions are not dispositive for two reasons. First, the parties' statement of stipulated facts states that these departments heads were being terminated for cause not because of a reorganization. More importantly, it is generally held that a mutual understanding cannot create a property interest contrary to state law. *Batterton v. Texas Gen. Land Office*, 783 F.2d 1220, 1124 (5th Cir.), *cert. denied* 479 U.S. 914, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986); *see also Baden v. Koch*, 638 F.2d 486 (2nd Cir.1980).[9] *Batterton* is particularly instructive. In that case, the plaintiff argued that the practice of the Texas General Land Office ("the GLO") of giving employees notice and an opportunity to improve their performance before being dismissed created a protected property interest in employment. *Batterton*, 783 F.2d at 1223. The Fifth Circuit first determined that the Texas law governing employment in the GLO established

that the employees were hired under an "at will" status. The court then held that informal customs cannot be the source of an employee's property interest where state law establishes at will employment. *Id.* In light of the statutory presumption of Ga.Code Ann. § 34–7–1 (1988) that employment for an indefinite term is terminable at will as well as this Court's holding in *Brown*, we must conclude the Personnel Ordinance did not grant department heads a property interest in their employment. Warren conceded at oral argument that the reorganization of the DOT fell completely within the Board's authority.[10] Because Warren has failed to establish that he had a protected property interest in his job as head of DOT, both his procedural and substantive due process claims must fail. *Nolin v. Douglas County*, 903 F.2d 1546, 1553 (11th Cir.1990).[11] We therefore need not reach the district court's rulings on legislative and qualified immunity.

### B. *The Liberty Interest Claim*

 Warren argues that defendant Joyner issued false and damaging state-

---

**9.** Mr. Warren also contends that 1982 Ga.Laws 4094 ("the 1982 Act") vested supervisory authority over all Henry County employees, including the decision to terminate, exclusively in the County Administrator. He therefore argues that the Board did not have the authority to terminate him. Mr. Warren's reading of the 1982 Act is overbroad. This 1982 Act amended the 1974 Act which had established the Board as the governing body of Henry County and set forth the Board's authority. *See* n. 1 *supra.* The 1974 Act gave the Board the specific duty to maintain the county roads and authorized it to hire a superintendent of roads. The 1982 Act did not restrict the Board's authority. Rather, it merely created an administrative office to exercise some of the Board's administration functions.

**10.** Mr. Warren argues that if the Board's power over personnel maintaining roads was not repealed by the 1982 Act, then the Personnel Handbook provides property rights in employment for all County employees except those working for the DOT. He claims that the Georgia legislature and the Board could not have intended this result. We have determined that the Board intended the Personnel Handbook to distinguish between department heads and rank and file employees. Accordingly, the Personnel Handbook may be read as providing a property right to all rank and file employees in the DOT but not to the DOT department head.

**11.** Moreover, Mr. Warren presented insufficient evidence to support a finding that the reorganization was a sham. The efficiency of the DOT had been an important campaign issue in the 1988 election. Furthermore, the Board implemented the reorganization fully. It consolidated all functions associated with road design, construction, and repair under a single department and placed the other DOT functions, the landfill and the shop, in a separate department of services. Consequently, Mr. Warren's reliance on our decision in *Hearn v. City of Gainesville*, 688 F.2d 1328 (11th Cir.1982), is misplaced. In *Hearn*, the plaintiff, a personnel technician, claimed that he was fired because of his boss' personal animosity toward him. *Id.* at 1333. The city claimed the plaintiff was terminated because there was insufficient work to occupy two personnel technicians. We found the evidence sufficient to support a finding that a reorganization was a sham where the plaintiff proved that his duties were assumed by the other personnel technician, whose overtime hours increased substantially, and that in the next city budget the supervisor requested funds for a second personnel technician, the position previously held by the plaintiff. *Id.* at 1334. In the instant case, the reorganization has remained in effect and related activities have been consolidated among separate departments.

ments regarding his management of the DOT which deprived him of a protected liberty interest.

The district court found that the statements consisted almost entirely of fact intensive examples of inefficiency at the DOT, *e.g.*, comments about broken equipment and a decrease in productivity. The court held that Warren failed to identify specific disputes with these factual statements or to show that they were false. The court concluded that Warren had failed to come forward with specific facts showing that there was a genuine issue for trial.

To establish a deprivation of a liberty interest without due process of law, a plaintiff must show: "(1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for [an] employee name clearing hearing." *Buxton v. City of Plant City*, 871 F.2d 1037, 1042–43 (11th Cir.1989).

In his brief, Warren claims that he did not specifically challenge the truth of the defendant's statements because the defendants' motion for summary judgment was premised on his waiver of an employee name clearing hearing. Nevertheless, Warren still fails to identify any false statements made by the defendants. Rather, he complains that the defendants' investigation was cursory and that the defendants did not have the expertise to evaluate the DOT. Warren is merely objecting to the defendants' conclusion that the DOT was run inefficiently, not to the truthfulness or accuracy of their specific statements. Accordingly, the district court was correct in granting the defendants' summary judgment on the liberty interest claim.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment.