NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0383n.06

No. 13-5898

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
May 21, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TOMMY PUCKETT, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| LEXINGTON-FAYETTE URBAN COUNTY | ) | KENTUCKY |
| GOVERNMENT, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE**: BATCHELDER, Chief Judge; McKEAGUE, Circuit Judge; OLIVER, District Judge.[*]

**OLIVER, District Judge.** Plaintiffs-Appellants Tommy Puckett, Donald Chumley, and Michael Sweeney (collectively, "Plaintiffs" or "Appellants"), appeal the order of the district court granting Defendant-Appellee Lexington-Fayette Urban County Government's (the "LFUCG", "Defendant" or "Appellee") Motion to Dismiss for Failure to State a Claim. For the following reasons, we AFFIRM the district court's decision.

## I. FACTUAL AND PROCEDURAL HISTORY

This case arises from the LFUCG's reduction in healthcare coverage for retiree police officers in the County. In 1999, the LFUCG Council passed two Ordinances establishing policies regarding health insurance coverage for retirees of the LFUCG police force. The Ordinances require the LFUCG to pay a "sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred (100) percent of the [LFUCG's]

---

[*] The Honorable Solomon Oliver, Jr., Chief Judge, United States District Court for the Northern District of Ohio, sitting by designation.

contribution [to the health insurance component of the benefit pool for current urban county government employees]" for qualifying retirees of the police and firefighting departments of the LFUCG who elected to participate in the LFUCG's group health insurance plan, LFUCG Code of Ordinances, §§ 23-36.5 and 23-36.6. In 2002, the Kentucky legislature codified these provisions in KRS 67A.345, which again explicitly capped retiree police health insurance benefits at "one hundred percent (100%) of the urban-county government's contribution to the health insurance component of the benefit pool for current urban-county government employees." KRS 67A.345(2)(a).

Until 2012, retiree police officers, including Plaintiffs, had received 100% coverage of their insurance premiums because their premiums fell below the statutory limit capping retiree benefits at 100% of current employees' benefits. In 2012, coverage for retiree police officers' health insurance premiums for those participating in plans under §§ 23-36.5 and 23-36.6 fell below 100% of the premiums for Plaintiffs' chosen plans. The LFUCG cited rising costs in health insurance premiums for the decrease in coverage. Plaintiffs brought suit against the LFUCG, claiming that they had a property interest in the retiree health insurance premiums and that the reduction in coverage constituted a deprivation of their property rights without due process. Plaintiffs also alleged that the LFUCG's actions constituted a denial of their substantive due process rights, and a violation of the Contract Clause of the United States Constitution. Plaintiffs alleged that they were deprived of a protected property interest based on the Kentucky statute, the ordinances, communications from LFUCG officials and representatives that the LFUCG would cover 100% of the health care insurance premiums of its retired police officers who were participants in the LFUCG group health plan, and established custom and practice that extended for more than a decade. Puckett retired from the LFUCG Division of Police in 2009, and has since continued to participate in the group health plan; Chumley retired in 2004, and has

2

participated in the group health plan since the earliest possible date; Sweeney is currently an officer in the Division of Police.

Defendant filed its Motion to Dismiss on September 25, 2012 (Dist. Ct. Dkt., ECF No. 3). On the same day, Defendant filed a Motion to Review/Take Judicial Notice (Dist. Ct. Dkt., ECF No. 4), in which it asked the court to take judicial notice of three public record documents for the purpose of analyzing the Motion to Dismiss without converting it to a motion for summary judgment. All three documents relate to the LFUCG's benefit policies.[1] Plaintiffs did not oppose this motion, and the district court granted it on November 26, 2012 (Dist. Ct. Dkt., ECF No. 10).

The district court granted Defendant's Motion to Dismiss on June 12, 2013. In its Order (Dist. Ct. Dkt., ECF No. 10), the district court found that Plaintiffs had asserted only one right: the right to have 100% of a single health-insurance premium paid by the LFUCG. The court found that Plaintiffs had asserted in their complaint that this right stemmed from the two ordinances and the state statute.

The district court next analyzed the ordinances and the statute together. Noting that the statute and ordinances explicitly limited contributions to retirees to 100% of the contributions to *current* LFUCG employees, the court found that neither the statute nor the ordinances granted police officer retirees a property interest in the payment of 100% of their health insurance premiums.

The court next addressed Plaintiffs' argument that their constitutionally protected property interest in the full payment of a health insurance premium arises not only from the statute and ordinances, but also from representations of LFUCG officials and from the custom

---

[1] The documents are: a Premium Benefit Pool Supplement Cost Analysis for LFUCG Employee Groups and Retirees; the LFUCG Police Fire and Pension Fund: Benefits Open Enrollment Informational Letter and Booklet. (2012 Benefit Year); and the LFUCG Police Fire and Pension Fund: Benefits Open Enrollment Informational Booklet (2012 Benefit Year).

3

and practice of paying 100% of the premiums for a long period of time. The district court found Plaintiffs' arguments unavailing because the representations and custom and practice relied on by Plaintiffs directly contradict the statute and ordinances. The court explained that for representations and custom and practice to create a property interest, they cannot be contrary to express provisions of regulations and statutes. Because the ordinances and statute at issue in the instant case are not ambiguous, the court concluded that the representations and custom and practice alleged by Plaintiffs did not create a protected property interest. Therefore, the court dismissed Plaintiffs' due process claim.

Finally, the court rejected Plaintiffs' Contract Clause argument. The court found that there was no contract between the LFUCG and the police officer retirees forever obligating the LFUCG to pay 100% of the retirees' health insurance premiums. Accordingly, the court dismissed Plaintiffs' entire Complaint for failure to state a claim.

## II. STANDARD OF REVIEW

We review the district court's order of dismissal *de novo*. *Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011). For the purposes of a motion to dismiss, we take Plaintiffs' allegations as true. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 575 (6th Cir. 2008). To survive a motion to dismiss, Plaintiffs' complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. ANALYSIS

Plaintiffs put forth three arguments on appeal. First, Plaintiffs argue that Defendant's reduction in health insurance premium payments violates the Fourteenth Amendment of the United States Constitution because their property interests in police retiree health care benefits were taken without due process. (Appellants' Br. at 10.) Second, Plaintiffs argue that their substantive due process rights were violated when the LFUCG decided to reduce health

4

insurance premium payments. (*Id.* at 22.)  Finally, Plaintiffs argue that the LFUCG's actions constitute a violation of the Contract Clause of the United State Constitution. (*Id.* at 26.)

## A. Property Interest

Plaintiffs contend that their property interest arose from the Kentucky statute, the city ordinances, the representations of local officials, and custom and practice. (*Id.* at 13.) Plaintiffs also argue that the district court erred in evaluating their claims as asserting a property interest in receiving 100% of the premium for any plan of their choice.  (Reply at 1.) Plaintiffs state that their alleged property interest is in having the same health care insurance premium payments as actively serving officers. (Appellant Br. at 20-21.)  They maintain that the reference in their Complaint to having a property interest in full coverage of any premium of their choice is "but only one of the grounds on which plaintiff claim deprivation of [their property] rights," based on certain representations made by LFUCG officials. (Reply at 2.)

The Supreme Court has held that "[to] have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). While protected by due process, "[p]roperty interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985) (quoting *Roth*, 408 U.S. at 577).

We are not called to answer whether Plaintiffs have *any* property interest in retirement benefits.  Rather, the parties' dispute centers around the exact nature of Plaintiffs' property interest.  Defendant maintains that the property interest cannot be anything but that dictated by the plain language of the Kentucky statute and the ordinance, that is, qualifying retirees' health insurance premiums are limited to 100% of the LFUCG's contribution to current county

5

government employees. Defendant contends that nothing in the statute and ordinances requires the LFUCG to cover 100% of the retirees' chosen health insurance premiums.

Plaintiffs advance two theories in regard to their property interest. In their brief, Plaintiffs argue that the ordinances and statute "committed LFUCG to covering *the premium for the plan coverage selected by the retiree* not that imposed or selected by LFUCG." (Appellant Br. at 17 (emphasis in original).) However, Plaintiffs also mention that their asserted property interest is in "a level of police retiree health care benefits at least equal to that of active police officers." (*Id.* at 10.) In their Reply, Plaintiffs develop this latter theory further. Plaintiffs argue that the district court erred in not considering this theory of their property interest.

Plaintiffs argue in their Reply that the district court and the LFUCG mischaracterize Plaintiffs' claimed property interest as only requiring LFUCG to pay 100% of their chosen health insurance premiums. (Reply at 1.) Instead, Plaintiffs contend that their property interest is in having their health care benefits fully paid for, which involves either reading the statute as covering 100% of their chosen premiums, or as capping their premiums at the level of actively serving police officers' benefits. Plaintiffs state that "this error infected the court below's ruling and is central to appellee's *Iqbal/Twombly* plausibility argument." (*Id.*)

Yet this characterization of Plaintiffs' property interest is not present in the Complaint. While Plaintiffs seek to paint their allegations as asserting a property interest broader than simply 100% coverage of the premium for the health care plan of the retiree's choice, their Complaint plainly states that this is the property interest they claim was violated. Plaintiffs point to passages in their Complaint where they refer to the property interest as a "promise to pay for a certain level of benefits" and a "protected property interest in their retiree health care benefits." (Reply at 2-4). However, Plaintiffs' Complaint plainly states:

6

35. Plaintiffs have a property interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution arising from and established by, among other things, the following: LFUCG ordinances, state statute, communications from LFUCG officials and represenatives [sic] *that LFUCG would cover 100% of the health care insurance premiums of its retired police officers* who were participants in the LFUCG group health plan and established custom and practice that extended for more than a decade.

(Compl. at ¶ 35, Dist. Ct. Dkt., ECF No. 1) (emphasis added). Therefore, Plaintiffs' attempt to assert a different property interest, an interest in their having health care benefits match the health care benefits of actively serving police officers, is unavailing. Not only may Plaintiffs not raise arguments on appeal not previously addressed by the district court, *Michigan Bell Telephone Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002), they also may not add new factual allegations and theories of the case on appeal. *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 328-29 (6th Cir. 2006). Allowing Plaintiffs to present a new theory of the case on appeal would essentially allow Plaintiffs "two bites at the apple; a practice that would be very disruptive of orderly trial procedure." *Richmond v. Settles*, 450 F. App'x 448, 452 (6th Cir. 2011) (citations omitted).

Plaintiffs' argument that the lower court's ruling was "infected" by the court's failure to consider this other theory of their property interest also fails since Plaintiffs did not assert this theory in their Brief in Opposition to Defendant's Motion to Dismiss. Plaintiffs' only mention of "actively serving police officers" was in stating that the "purpose of both statute and the ordinance was to align police retiree health insurance benefits and those of actively serving police officers." (Br. in Opp'n at 11, Dist. Ct. Dkt., ECF No. 7). However, at no point before this appeal did Plaintiffs raise this as a property interest. We will therefore only consider the

property interest asserted in their Complaint: that Plaintiffs had an expectation that the LFUCG would cover 100% of the health care insurance premiums of its retired police officers. [†]

The Kentucky statute and the city ordinances explicitly cap retiree benefits for qualifying retirees at "a sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred percent (100%) of the urban-county government's contribution to the health insurance component of the benefit pool for current urban-county government employees." KRS 67A.345(2). In the city ordinances, the term "contribution" is defined as "the urban county government's contribution to the health insurance component of the benefit pool for current urban county government employees." Plaintiffs argue that their property interest is not simply defined by these statutes, but also by representations of LFUCG officials and custom and practice. Plaintiffs maintain that they were assured full coverage of their health insurance premiums in retirement.

The Sixth Circuit has not addressed whether a property interest may be created through representations and custom and practice where these are contrary to existing statutes. However, some of our sister circuits have held that representations and customs "cannot create a property interest for the purposes of due process when they are contrary to the express provisions of

---

[†] While we do not address Plaintiffs' theory that their property interest lies in receiving the same health care benefits as actively serving police officers, we note that this would appear to directly contradict the express language of KRS 67A.345 and the city ordinances. The statute and ordinances specifically place a cap on the amount of coverage retirees can receive. Plaintiffs suggest that the statute could be read to refer to "active police officers" as "current employees." However, since active police officers have their benefits determined through collective bargaining agreements, it is unlikely that the statute and ordinances could be referring to actively serving police officers. Further, Plaintiffs' argument proposes two incompatible theories of their property interest. If Plaintiffs argue they have a property interest in having the premium of their choice fully covered, that premium cannot also be tied to the premium received by active duty police officers. Plaintiffs' premiums would then be entirely dependent on the collective bargaining process, which could conceivably yield a level of coverage below the one they currently receive.

8

regulations and statutes." *Baden v. Koch*, 638 F.2d 486, 492 (2d Cir. 1980). *See also Batterton v. Tex. Gen. Land Office*, 783 F.2d 1220, 1224 (5th Cir. 1986) ("To say that customs entirely contrary to a statute's meaning may stem from that statute would defy reason; only if consistent with official law may such practices create a property interest in one's job."); *Driggins v. City of Oklahoma City, Okla.*, 954 F.2d 1511, 1514-15 (10th Cir. 1992) (holding that representations or mutual understandings contrary to an explicit city charter provision cannot lead to a property interest where those officials making the representations did not have the authority to deviate from the express city charter provisions); *Brett v. Jefferson Cnty.*, 123 F.3d 1429, 1434 (11th Cir. 1997) ("While protected property interests in continued employment can arise from the policies and practices of an institution, a property interest contrary to state law cannot arise by informal custom.").

In *Batterton*, the Fifth Circuit considered whether employees of the Texas General Land Office had a property interest in their jobs created by a statute or, in the alternative, by informal practices within the department. *Batterton*, 783 F.2d at 1221. Following *Roth*'s dictate that state law governs whether a plaintiff has a legitimate claim to an entitlement, the *Batterton* court held that the Texas statute in question did not create a property interest in the General Land Office employees' jobs, and instead that the statute said that they could be fired for any reason. *Id.* at 1222-23. The court recognized that "the letter of state law alone is not necessarily determinative" and that "a property right might be based on 'mutually explicit understandings.'" *Id.* at 1223 (quoting *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 252 (5th Cir. 1984)). However, the court noted that this rule stemmed from "cases in which no statute resolved whether a property interest in one's job existed." *Id.* Thus, the court went on to state that the Supreme Court's holding in cases such as *Perry v. Sindermann*, 408 U.S. 593 (1972), "that an

9

informal understanding may lead to a property interest must therefore be recognized as standing in the absence of an officially promulgated position." *Batterton*, 783 F.2d at 1223. The *Batterton* court therefore held that "[t]o say that customs entirely contrary to a statute's meaning may stem from that statute would defy reason; only if consistent with official law may such practices create a property interest in one's job." *Id.* at 1224.

Plaintiffs rely mainly on *Mayborg v. City of St. Bernard*, No. 1:04-cv-00249, 2006 WL 3803393 (S.D. Ohio Nov. 22, 2006), for their argument[‡] that they had a property interest in the full coverage of their health insurance premiums. In *Mayborg*, a 1961 city ordinance promised hospital and medical insurance coverage to the city's active employees upon retirement as long as they qualified and had served for at least five years. *Id.* at *3. The city continued to pay these benefits, though they reformatted them several times. In 1985, following the introduction of collective bargaining for public sector employees in Ohio, the city passed a series of ordinances in which it agreed to pay the difference between the insurance premiums and a state health care benefit in order to maintain full coverage of the existing premiums for retirees. *Id.* at *4. A trust fund was also set up to pay for these benefits. *Id.* In 1992, to cover the rising cost of insurance premiums, the city passed another ordinance designed to reimburse retirees for insurance premium costs that had been taken out of their monthly pension checks. *Id.* at *5. In 2003, the law director for the city investigated the legality of the retirement benefits and stated that he could find no statutory basis, either express or implied, that would allow the city to keep paying these benefits. *Id.* at *7.

---

[‡] Plaintiffs rely on *Mayborg* mainly for their substantive due process argument. However, the analysis in *Mayborg* is relevant to their property rights argument. As noted *infra*, Plaintiffs' reliance on *Mayborg* for their substantive due process argument focuses mainly on the *Mayborg* court's use of the "shocks the conscience" language, but the analysis in *Mayborg* is limited to the deprivation of property rights in that case.

The plaintiffs, all retirees of the city government, sued the city alleging that they had a property interest in full coverage of their health insurance premiums. The city argued that the ordinance only applied to those employees working for the city in 1961 when the original ordinance was passed. The district court, after a bench trial, found that the changes made to the insurance premium payments in 1985 and 1992 did not constitute a new benefit, but were instead continuations of the benefits granted to retirees by the city in the 1961 ordinance. *Id.* at *6. The court explained that the ordinances of 1985 and 1992 sought to memorialize what was in fact a collective bargaining agreement, which mandated the continuation of full health insurance coverage for retirees. *Id.* The court also found that several city representatives had, throughout the years, reaffirmed the city's commitment to providing full health care coverage for its retirees. The court therefore found that the retirees had a vested right to the retirement benefits in dispute, and that deprivation of this vested property right was a violation of the plaintiffs' substantive due process rights. *Id.* *11.

Plaintiffs' reliance on *Mayborg* is misplaced in several ways. First, unlike the Kentucky statute and city ordinances in the instant case, the 1961 ordinance in *Mayborg* did not set an explicit limit on the health insurance coverage received by retirees. Second, the *Mayborg* court found clear evidence of representations made by city officials regarding the insurance coverage for retirees, which was necessary to interpret the somewhat ambiguous ordinance. Here, the statute and ordinances are not ambiguous – they clearly limit the health insurance premiums to 100% of the city's contribution for current employees. Third, the court in *Mayborg* found that the city had turned the benefits into contractual provisions with the retirees, and that the retirees' rights to the retirement benefits had vested. However, this is not the case here. In *Mayborg*, the court specifically used language of contract law to find that extrinsic evidence such as

representations and custom could be used to determine the contracting parties' intent. *Id.* at *8 (citing *Columbus, H.V. & T. Ry. Co. v. Pa. Co.*, 143 F. 757, 763 (6th Cir. 1906)). Yet this analysis rested on the fact that the 1985 and 1992 ordinances had turned the ambiguous language of the 1961 ordinance into properly vested benefits. Nothing about the language of the statute and ordinances in the instant case suggests the LFUCG intended to create vesting property rights. Finally, even the city in *Mayborg* acknowledged that the retirement benefits had vested, giving plaintiffs a contractual entitlement to these benefits. *See Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998).

Plaintiffs also argue that Kentucky law, under *Board of Education of Louisville v. City of Louisville*, 157 S.W.2d 337 (Ky. App. 1941), forbids the diminution of benefits once a recipient has worked for, qualified for, and begun receiving those benefits. (Appellant Br. at 18.) However, that case is readily distinguishable from the case at hand. In *Board of Education of Louisville*, the Kentucky Court of Appeals found that the employees "had a contract with an agency of the Commonwealth of Kentucky entitling them to the benefits for which they had paid." *Bd. of Educ. of Louisville*, 157 S.W.2d at 343. The court in *Board of Education of Louisville* specifically noted that the retirees' pension rights had vested, and that these rights guaranteed them a certain level of retirement income based on their contributions. In the instant case, the statute and ordinances explicitly limit the health insurance premium coverage to the level of contributions for current employees. Therefore, Plaintiffs cannot claim that their receipt of 100% health insurance coverage constituted a vested right when it was explicitly subject to limitation per the statute and ordinances creating it. *See Curtis Green & Clay Green, Inc. v. Clark*, 318 S.W.3d 98, 104 (Ky. 2010) ("The definition of a vested right is found in *Louisville Shopping Center, Inc. v. City of St. Matthews*, 635 S.W.2d 307, 310 (Ky.1982), wherein the

12

Supreme Court said: '[a] right, in order to be vested (in the constitutional sense) must be more than a mere expectation of future benefits or an interest founded upon an anticipated continuance of existing general laws.'"). Here, Plaintiffs' right to receive health insurance premium coverage is not in question, but their right to receive 100% of the premium of their choice cannot be more than a "mere expectation of future benefits." *Louisville Shopping Center*, *Inc.*, 635 S.W.2d at 310.

We find the rule enunciated in *Batterton*, *Driggins*, and *Brett* to be persuasive. We hold that representations and customs may not create a property right where they are contrary to an existing statute or regulation. As in the cases from our sister circuits, the holdings in *Roth* and its progeny require that customs "stem from…state law." *Roth*, 408 U.S. at 577. As such, the *Batterton* court's analysis is particularly persuasive as it stands to reason that customs or representations contrary to state law are inconsistent with *Roth*'s requirement that customs stem from state law.

Accordingly, we find Plaintiffs' arguments unpersuasive. The Kentucky statute and city ordinances explicitly cap retiree health care benefits at 100% of the city's contribution to the benefit pool for current city employees. Therefore, any representations made to Plaintiffs that they would receive 100% of their chosen health care premiums cannot be reconciled with the language of the Kentucky statute and the city ordinances. In their Complaint, Plaintiffs make the following statement:

> Thereafter, the ordinances committed LFUCG to committing on behalf of the retired police officer "a sum equal to the single premium for the plan coverage selected by the retiree, but not more than one hundred (100) percent of the contribution." This promised that LFUCG would cover 100% of the health care insurance premium for such participating retired police officers.

13

(Compl. at ¶ 10, Dist. Ct. Dkt., ECF No. 1.)  This statement is telling regarding Plaintiffs' misreading of the ordinances. Plaintiffs' selective reading of the ordinances fails to acknowledge that "contribution" is defined as "the urban county government's contribution to the health insurance component of the benefit pool for current urban county government employees." Therefore, Plaintiffs err in reading this statement as guaranteeing them 100% coverage of their insurance premiums.  The plain reading of the ordinances demonstrates that the LFUCG's responsibility for retiree premiums is capped at the amount of its contribution for current urban county government employees.

Further, even if we were to find the statute and ordinances ambiguous and that representations or custom and practice could support the existence of a constitutionally-protected property interest, Plaintiffs have not adequately pled what these representations and customs are. In support of their argument that a custom or practice existed, Plaintiffs only refer to the LFUCG's coverage of 100% of their premiums until 2012.  This is simply the same coverage as that given to current county employees, per the language of the statute and ordinances, as evidenced by the documents submitted by Defendant.  As for representations, Plaintiffs point to a quotation from the *Lexington Herald-Leader* by Councilman Bill Farmer saying that the police retiree benefits were given in consideration for the "many times [] each of [them] put [themselves] on the line and at risk for us." (*Id.* at ¶ 42.)  The rest of their Complaint contains only conclusory allegations that their property interest stems from unspecified communications by LFUCG officials and representatives. (*Id.* at ¶ 35.) These allegations alone do not rise to the level of plausibility required by *Twombly*  and *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544 (2007))).

14

Accordingly, we affirm the district court's holding that Plaintiffs' Complaint does not contain facts sufficient to state a claim that the LFUCG's actions constituted a deprivation of their property rights without due process.

## B. Substantive Due Process

Plaintiffs argue that the LFUCG's reduction of their health insurance coverage shocks the conscience, and constitutes a violation of their substantive due process rights. (Appellant Br. at 22-23.) Plaintiffs contend that this violation "requires strict scrutiny review" of Defendant's actions. (*Id.* at 23.) Defendant counters that the LFUCG's actions do not shock the conscience, especially without a contractual right to retiree health insurance benefits. (Appellee Br. at 21-23.)

The interests protected by substantive due process are much narrower than those protected by procedural due process. Interests protected by substantive due process include: interests protected by specific constitutional guarantees; interests so rooted in the traditions and conscience of our people as to be deemed "fundamental rights;" and the right to freedom from government actions so arbitrary and abusive as to "shock the conscience." *Bell v. Ohio State University*, 351 F.3d 240, 249-50 (6th Cir. 2003). To the extent an interest is protected under an "explicit textual source of constitutional protection," that particular provision must be the guide for analyzing the claim, rather than the more generalized notion of substantive due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Plaintiffs have not premised their substantive due process claim on any explicit constitutional guarantee or fundamental right. Rather, they rely on a "shocks the conscience" theory.

The LFUCG's actions also do not "shock the conscience." Generally, the "shocks the conscience" strain of successful substantive due process claims is recognized "in the exclusive

15

context of cases involving physical abuse." *Choate's Air Conditioning & Heading, Inc. v. Light, Gas, Water Div. of Memphis*, 16 F. App'x 323, 329 (6th Cir. 2001) (citing *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990)). The "shocks the conscience" test has also been applied sparingly in the zoning context to refer to official conduct that is "arbitrary in the constitutional sense." *Id.* at 330 (citing *Pearson*, 961 F.2d at 1222). However, Plaintiffs' allegations do not shock the conscience, at least not in any way that rises to the level of a constitutional violation. While the reduction in benefits might have been unfair, it was also consistent with the Kentucky statute and the city ordinances, and thus cannot be deemed to be "arbitrary in the constitutional sense." Generally, conduct that "shocks the conscience" is "conduct that is 'so 'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency.'" *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547-48 (6th Cir. 2012) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)). The LFUCG's conduct in this case does not rise to that level.

We note that Plaintiffs seem to conflate different types of substantive due process claims, perhaps due to Plaintiffs' reliance on *Mayborg*. As previously discussed, we find Plaintiffs' reliance on *Mayborg* unpersuasive. While the *Mayborg* court stated that the city's conduct in that case did "shock the conscience of the Court," *Mayborg*, 2006 WL 2803393 at *11, the analysis relied on by the *Mayborg* court was premised on the finding that the plaintiffs had a vested property interest in their health care benefits. *Id.* ("The Court further finds that Plaintiffs have adequately established a due process violation of a constitutionally protected property interest, because they have shown that governmental conduct deprived them of a right previously held under state law."). The *Mayborg* court used the "shocks the conscience" language to describe the deprivation of a vested property right under state law, without actually performing a substantive

16

due process analysis. In any event, that court's opinion is clearly distinguishable. Having already found that Plaintiffs in the instant case do not have the property interest they seek to assert, *Mayborg* does not help Plaintiffs persuade us that the LFUCG's actions "shock the conscience."

Accordingly, Plaintiffs' Complaint does not contain facts sufficient to state a claim for violation of their substantive due process rights.

### C. Contract Clause

Plaintiffs argue that a contractual relationship existed between Plaintiffs and Defendant, and that the reduction in health insurance premium coverage constituted a breach of contract and thus a violation of the Contract Clause. (Appellant Br. at 26-27.) Plaintiffs' Complaint states that "Plaintiffs [sic] right and entitlement to retiree health care benefits, as enshrined by LFUCG ordinance, state statute, understandings between LFUCG and plaintiffs and extended recognition of that understanding for more than a decade is a contractual relationship between plaintiffs and LFUCG." (Compl. at ¶ 47, Dist. Ct. Dkt., ECF No. 1.) Defendants argue that no contract existed, and the health insurance premiums were paid to Plaintiffs as required by state law and the city ordinances. (Appelle Br. at 27.)

The Contract Clause of the United States Constitution prevents any state from passing "any…Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. However, this "prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428 (1934). A Contract Clause violation occurs when a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). To determine whether such

17

an impairment has occurred, the court must find that: "(1) a contract exists, (2) a change in law impairs that contract, and (3) the impairment is substantial." *Linton v. Comm'r of Health & Env't*, 65 F.3d 508, 518 (6th Cir. 1995). Upon finding that "a contractual obligation is substantially impaired by the change in law, the court must further inquire whether the adjustment of the rights of the parties to the contractual relationship was reasonable and appropriate in the service of a legitimate and important public purpose." *Mascio*, 160 F.3d at 315.

Plaintiffs have not shown that a contract between themselves and the LFUCG existed. As noted above, the Kentucky statute and city ordinances explicitly limit the level of health insurance coverage. Plaintiffs would have us interpret the statute and/or the ordinances as a contract between themselves and the LFUCG. However, Plaintiffs seek to supplement the plain language of the statute and ordinances with allegations about representations made by city officials. Basic principles of contract law state that "in the absence of ambiguity, a written instrument will be enforced strictly according to its terms." *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966). Similarly, "interpretation of legislative acts is limited, for '[i]f the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must be ordinarily regarded as conclusive.'" *Nixon v. Kent Cnty.*, 76 F.3d 1381, 1386 (6th Cir. 1996) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)). Therefore, Plaintiffs may not rely on extrinsic evidence, such as representations from city officials, particularly where those alleged representations directly contradict the unambiguous language of the statute. In addition, as previously discussed, even if the statute and ordinances could be deemed ambiguous, Plaintiffs have not pled much more than mere conclusory allegations regarding said representations.

Accordingly, we affirm the district court's determination that Plaintiffs' Complaint does not contain facts sufficient to state a claim for violation of the Contract Clause.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the decision of the district court dismissing Plaintiffs' Complaint for failure to state a claim.