United States Court of Appeals,

Eleventh Circuit.

No. 94-8158.

UNITED STATES of America, Plaintiff-Appellee,

v.

ROUTE 2, BOX 472, 136 ACRES MORE OR LESS, LAND LYING AND BEING IN
LAND LOT 221 OF THE 18TH DISTRICT, 1ST SECTION, TOWNS COUNTY,
GEORGIA with mailing address Route 2, Box 472, HIAWASSEE, GEORGIA,
Defendant,

Dyer's Trout Farms, Inc., Claimant-Appellant,

North Georgia Farm Credit, ACA Federal Credit Bank of Columbia,
Claimants.

Aug. 11, 1995.

Appeal from the United States District Court for the Northern
District of Georgia. (No. 2:92-cv-199-WCO), William C. O'Kelley,
Judge.

Before BIRCH and DUBINA, Circuit Judges, and CLARK, Senior Circuit
Judge.

CLARK, Senior Circuit Judge:

## I. Introduction

The issue to be decided in this case is whether an officer
and majority shareholder's criminal activity is imputable to a
corporation so as to deny the corporation an "innocent owner"
defense in a forfeiture action. Today, we hold that where a
corporate employee engages in criminal activity outside the scope
of his employment, with no benefit accruing to the corporation, and
such activity was without the knowledge of the other shareholders,
the criminal activity is not imputable to the corporation. We
therefore reverse the district court's grant of summary judgment
for the United States, and remand the case for entry of summary
judgment in favor of the claimant corporation, Dyer's Trout Farms,

Inc. Because we find that the innocent owner exception applies, we do not reach the second issue raised by the corporation—whether the forfeiture of the property was disproportionally excessive in violation of the Eighth Amendment.[1]

## II. Background

The parties agree regarding the facts surrounding this controversy, their dispute rather being focused on the applicability of the innocent owner defense. Therefore, only a brief recitation of the facts regarding ownership and control of the *res* in question is necessary.

On September 10, 1991, Agents of the Georgia Bureau of Investigation, the National Forest Service, and the Towns County Sheriff's Department discovered a number of marijuana plants growing on a parcel of land in Towns County, Georgia. The defendant real property is a single tract of approximately 136 acres, owned by Dyer's Trout Farms, Inc. (the "Farm"). Government agents discovered approximately 95 marijuana plants growing on a wooded hillside a quarter of a mile from the residence of William Dyer—president and majority shareholder of Dyer's Trout Farms, Inc. An additional five to ten plants were discovered growing adjacent to Dyer's residence. In outbuildings near Dyer's house, the officers found three marijuana cigarettes, potting soil, and "starter" cups that appeared to be connected to the marijuana

---

[1]The district court determined that forfeiture of the entire *res* did not violate the Excessive Fines Clause, noting that federal courts have consistently upheld the validity of harsh criminal penalties for drug offenses. Although this holding is *de facto* rendered void in light of our decision to reverse, we cast no opinion on the propriety of this conclusion.

growing on the wooded hillside.

Dyer admitted that he was aware of the plants growing adjacent to his residence, but denied knowledge of the 95 plants on the wooded hillside. In June 1992, William Dyer was convicted of possession of one ounce of marijuana in a non-jury stipulated trial in Towns County Superior Court. The United States has not indicated any intention to bring federal narcotics charges against Dyer. However, on October 20, 1992, the United States filed a complaint pursuant to 21 U.S.C. § 881(a)(7) for forfeiture *in rem* against the property, contending that it was used to facilitate illegal drug trafficking.

In 1976, the Farm was incorporated by Paul Dyer, the father of William, Willard, and Willis Dyer. The corporation was formed to engage primarily in the raising and selling of fish and livestock. In 1978, the land was transferred by Paul Dyer to Dyer's Trout Farms, Inc. When Paul Dyer died in 1981, he left his stock in the corporation to William Dyer. The present stock ownership is divided 68 percent to William Dyer, 16 percent to Willard Dyer, and 16 percent to Willis Dyer. The sole officers of the corporation are William Dyer, President, and Willard Dyer, Secretary. All three brothers work full time on the Farm.

The district court found: "For purposes of the government's motion for summary judgment the court accepts the following facts as true. Dyer's Trout Farms, Inc. is engaged exclusively in the business of raising and selling fish and livestock. The entire income of the corporation is derived from the sale of fish and livestock. The corporation has received no income or benefit from

the cultivation of marijuana.  Neither Willard or Willis Dyer was aware of or consented to the cultivation of marijuana on the corporate property."

In rejecting the Farm's innocent ownership defense, the district court stated:  "This court will not establish a particular number of shares of stock at which knowledge will be imputed from an individual to a corporation.  Other factors may increase or decrease the relevance of a percentage of stock shares.  However, in this case a defendant who has 68% of the corporation's shares *and* controlling authority of the daily activities of a family-owned corporation is found to provide that corporation with knowledge of his activities."

We think in this case there are "other factors" to consider and that they decrease the relevance of William's 68% stock ownership.  Additionally, we do not think the district court gave sufficient weight to certain language in 21 U.S.C. § 881(a)(7):

> ... except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed without the knowledge or consent of that owner.

How the Farm has been operated and the distribution of the benefits from the Farm influence our decision in this case.  The Board of Directors of the corporation consists of William, the President, and Willard, the Secretary.  The Board seldom has an official meeting.  Willard is in charge of the maintenance and growing of rainbow trout.  William is in charge of sales and the operation of the processing plant.  Willard is paid an annual salary of $10,000, William, the President, $7,800, and Willis $7,800.  No dividends have ever been paid, although one year each

of the brothers received a $2,000 Christmas bonus.  The corporation regularly employs six employees who report to William.  The three brothers meet about twice a month to discuss matters pertaining to the Farm.

There are five houses on the property, one of which is unoccupied.  Each brother occupies a house and Willard's son, Jason, occupies a house.  The brothers' mother, Mrs. Paul Dyer, lives with one of the brothers.  Since the formation of the corporation, two of the five houses have been built, William's and Willard's.  The brothers built these new houses using lumber cut from the land owned by the corporation.  The corporation paid all expenses of building these houses, including the appliances.  The corporation pays for the utilities for all four houses and maintains the houses and their appliances.  These facts are related to demonstrate that although William owns 68% of the stock, the Farm is operated more like an equal cooperative family venture in which the brothers may have some minor variation in their receipt of the benefits of the operation and there is some variance in their responsibilities.  We are impressed with two rather significant facts—William's growth of the marijuana was unknown to his brothers, and did not in any conceivable way benefit the corporation.

After the government and the Farm filed cross-motions for summary judgment, the district court granted the government's motion and denied the Farm's motion.  The Farm appeals, arguing that the court improperly rejected its innocent owner defense.

### III. Analysis

We review grants of summary judgment under a *de novo* standard of review, considering the evidence in the light most favorable to the non-moving party.[2]   Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions to the file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[3]

Under 21 U.S.C. § 881(a), the government must establish probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance.[4]   In the instant action, the Farm concedes that the United States can show probable cause that a portion of the property was used to grow marijuana, and that William Dyer was at least aware of the marijuana being grown next to his residence. Once probable cause is established, the burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture.[5]   This burden can be met either by rebutting the government's evidence, or by showing that the claimant was an innocent owner.[6]

The innocent owner defense is expressly provided for, as

---

[2]*Jaques v. Kendrick,* 43 F.3d 628, 630 (11th Cir.1995).

[3]Fed.R.Civ.P. 56(c);  *Akin v. PAFEC Ltd.,* 991 F.2d 1550, 1556 (11th Cir.1993).

[4]*United States v. A Single Family Residence,* 803 F.2d 625, 628 (11th Cir.1986).

[5]*United States v. $4,255,625.39,* 762 F.2d 895, 904 (11th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986).

[6]*A Single Family Residence,* 803 F.2d at 629.

stated above, within the four corners of 21 U.S.C. § 881(a)(7):
"... no property shall be forfeited under this paragraph, to the
extent of an interest of an owner, by reason of any act or omission
established by that owner to have been committed or omitted without
the knowledge or consent of that owner."[7]  The claimant bears the
burden of proving by a preponderance of the evidence that it did
not have knowledge of the illicit activity taking place on its
land.[8]  Here, we are confronted with the question of whether an
individual shareholder's knowledge of illicit activity is imputable
to the corporation.

Knowledge of an illegal activity may be attributed to a
corporation only when the knowledge was obtained by an agent acting
within the scope of his or her employment and for the benefit of
the corporation.[9]  "Acting within the scope of employment entails
more than being on the corporate employer's premises[,]" but rather
also involves an intent to benefit the corporation.[10]

In *One Parcel,* the Seventh Circuit was faced with a factual
scenario remarkably similar to the instant case.  The corporation

---

[7]The question of consent is not considered here, as the
Farm's argument is premised on its lack of knowledge.  It
follows, logically, that if the corporation was unaware of the
illicit activity, it could not have consented to it.

[8]*United States v. One Parcel of Land,* 965 F.2d 311, 315 (7th
Cir.1992).

[9]*Grand Union Co. v. United States,* 696 F.2d 888, 891 (11th
Cir.1983).

[10]965 F.2d at 316;  *also see United States v. Gold,* 743 F.2d
800, 823 (11th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct.
1196, 84 L.Ed.2d 341 (1985) (affirming jury instruction stating
that acting within the scope of corporate employment involves an
intention to produce at least in part some benefit to the
corporation).

in *One Parcel* was owned by three family members, a son and his parents, in equal one-third shares. The son, who retained the greatest authority in the corporation, including direction of the day-to-day operations of the property, bought and sold cocaine while on corporate premises. This drug activity was hidden from the other members, no corporate money was used to purchase drugs, nor was the money obtained put into the corporation. In short, except for the fact that the drug transactions took place on corporate land, the drug activity was wholly separate and apart from the corporation. Nevertheless, the government sought forfeiture of the parcel, arguing that the son's knowledge was imputable due to the nature and extent of his authority and interest in the corporation.

The Seventh Circuit rejected the government's contention, noting that the imputation of knowledge to the corporation turns not on an individual's stake in a corporation, but rather on whether the illegal action taken was within the scope of the individual's corporate authority and for the benefit of the corporation.[11] An individual's knowledge of his own illegal activities, albeit pursued on corporate property, will not be imputed to the corporation where the individual was acting for his own benefit, not for the benefit of the corporation, and outside the scope of his corporate employment.

The district court distinguished *One Parcel* from the instant case on the basis that the defendant there owned one third of the property, while William Dyer owned 68%. Corporate knowledge,

---

[11]965 F.2d at 317.

however, should not, and indeed does not, turn on percentage ownership of the stockholder with knowledge of the illegal activity. Before such an individual's knowledge can be imputed to the corporation, a showing would need to be made that the corporation was merely a "sham" corporation, designed solely to protect an individual's illicit activities.[12] We do not believe this places too great a burden on the government seeking to divest a business of its assets through forfeiture.

In the present case, no evidence was offered to suggest that the corporation was something other than an entirely legitimate company, operating since its inception for the sole purpose of raising fish and livestock. William Dyer's marijuana cultivation took place separate and apart from the corporation, and there was no evidence that other members of the corporation were aware of it, that the corporation reaped any benefit from his actions, or that there was an intent to benefit the corporation. The plain language of § 881(a)(7) appears to contemplate precisely this type of situation where the innocent owner defense ought to apply.

In *Grand Union Co. v. United States,*[13] we said: "We have held in cases brought under the False Claims Act that the knowledge of an employee is imputed to the corporation when the employee acts for the benefit of the corporation and within the scope of his

---

[12]The Seventh Circuit succinctly outlined the scenarios under which the innocent owner defense would not apply: (1) if the corporation was merely the son's alter ego; (2) if the corporation had been established to serve the son's drug business; or (3) if title had been given to the corporation in order to protect the son's assets. 965 F.2d at 320.

[13]696 F.2d 888 (11th Cir.1983)

employment." We see no reason to depart from the well established principles of corporate law that to impute knowledge to a corporation an agent must be acting within the scope of his employment and benefiting the corporation rather than acting against its benefit.

The government argues, and the court below agreed, that the instant case is more analogous to *United States v. 141st Street Corp.*[14] than to *One Parcel.* In that case, the defendant property was an apartment complex in which there had been rampant and obvious drug trafficking. The corporate claimant that owned the building raised the innocent owner defense. The district court rejected the defense as a matter of law, and the Second Circuit affirmed, noting that the property was "a veritable anthill of drug activity" and that the building superintendent accepted bribes from the drug dealers and charged these dealers exorbitant rents.[15] The Court also noted that the corporation's president and principle stockholder was aware that the drug activity was occurring in the building. It was also apparent that the corporation benefitted from the illegal activity. The Second Circuit concluded that the president's knowledge could be imputed to the corporation.[16]

In *One Parcel,* the Seventh Circuit distinguished the case before it from *141st Street* in two ways, both of which are applicable to the case before us as well. First, the Court noted

---

[14]911 F.2d 870 (2d Cir.1990), *cert. denied,* 498 U.S. 1109, 111 S.Ct. 1017, 112 L.Ed.2d 1099 (1991).

[15]911 F.2d at 877.

[16]*Id.*

that the corporation in *141st Street* benefitted from the drug activity, in that it was able to charge exorbitant rents.[17]  In *One Parcel,* no benefit to the corporation accrued from the son's drug activity.  Likewise, Dyer's Trout Farm, Inc. received no benefit whatsoever from William Dyer's drug activity.  Indeed, the government never attempts to prove otherwise.  Second, in *141st Street,* corporate officers who were independent of the drug activity were aware of the activity.  Contrarily, in *One Parcel,* the other members of the corporation were entirely unaware of the illicit activity being carried on by the son.  Again the situation is the same in the case at bar:  no evidence has ever been offered that the other members of the Farm were aware of William Dyer's drug cultivation.

In sum, the case law suggests that the applicability of the innocent owner defense will often turn on the particular facts surrounding *not* the individual's ownership and authority over the corporate parcel, but rather whether the individual vested with such authority was acting within the scope of his corporate employment.

## IV. Conclusion

For the foregoing reasons, the district court's grant of summary judgment is REVERSED and the case is REMANDED for entry of summary judgment in favor of Dyer's Trout Farms, Inc.

---

[17]965 F.2d at 318.