United States Court of Appeals,

Eleventh Circuit.

No. 96-8553.

Herbert E. BRETT; David Hannah; Wayne D. Hattaway; Jerry O. Hudson, Plaintiffs-Appellants,

v.

JEFFERSON COUNTY, GEORGIA; Charles Gary Hutchins, individually and in his official capacity as Sheriff, Jefferson County, Defendants-Appellees.

Oct. 3, 1997.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV193-144), Dudley H. Bowen, Jr., Judge.

Before COX and BIRCH, Circuit Judges, and RAFEEDIE[*], Senior District Judge.

BIRCH, Circuit Judge:

Proceeding under 42 U.S.C. § 1983 and 42 U.S.C. § 300bb-7, four former deputy sheriffs, whom a newly elected sheriff did not reappoint because of their political activities, appeal the district court's grant of summary judgment to the county and sheriff. The deputy sheriffs contend that the sheriff's failure to reappoint them violated their free speech and procedural due process rights under the First, Fifth, and Fourteenth Amendments. They also allege that the district court erroneously denied fines and attorney's fees based on the county's failure to offer the deputy sheriffs continued medical coverage as required under the Public Health Service Act, 42 U.S.C. § 300bb-6. We vacate the summary judgment on the First Amendment claim, affirm the summary judgment on the additional claims, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

Herbert E. Brett, David Hannah, Wayne D. Hattaway, and Jerry O. Hudson were deputy sheriffs in Jefferson County, Georgia when Zollie Compton, who had been the sheriff of Jefferson County for more than thirty years, chose not to seek reelection in 1992. Prior to that decision, Compton had taken steps to ensure that his employees fell under the county's civil service system.

---

[*]Honorable Edward Rafeedie, Senior U.S. District Judge for the Central District of California, sitting by designation.

Specifically, he appeared at a meeting of the Jefferson County Board of Commissioners in 1989 and requested that his employees be subject to the Jefferson County personnel policies, which provide that regular county employees can be terminated only for cause.[1]  Compton subsequently gave the deputy sheriffs documents showing that they were subject to the county personnel policies and procedures.

When Compton announced his plans not to seek reelection in the 1992 election, several candidates entered the race for sheriff.  The candidates who ran in the Democratic primary included Charles Gary Hutchins and deputy sheriffs Hudson and Hattaway.[2]  Because there was no majority winner in the primary, a runoff election between Hudson and Hutchins was held.[3]  Hutchins, who prevailed in the runoff election, subsequently was elected sheriff in the general election.

Hannah and Brett supported Hudson's campaign in the primary and runoff elections.  While they were off-duty, they talked with voters about Hudson's qualifications and wore clothing endorsing his candidacy.  Brett, while off-duty, distributed campaign literature and drove a personal car with signs supporting Hudson.  After Hudson's defeat in the runoff election, a deputy that supported Hutchins in the general election told Brett and Hannah that they should place Hutchins' campaign signs in their yards to ensure their continued employment.  Neither Brett, Hannah, Hattaway, nor Hudson posted campaign signs in their yards for the general election.

Hannah and Hudson approached Hutchins after the runoff election and asked whether Hutchins would reappoint them if he were elected.  Based on this conversation, Brett, Hannah, Hattaway, and Hudson believed that any further attempts to apply for positions under Hutchins

---

[1]No record of the request was present in the minutes of the meeting;  however, the record shows that the minutes of the meetings generally were not comprehensive.  There is a dispute in the record as to whether the board officially or formally adopted the civil service system as applied to the sheriff's department.

[2]Hudson and Hattaway announced their candidacies and tendered their resignations.  By resolution of the Board of Commissioners, however, the deputy sheriffs were granted leaves of absence without pay during their campaigns.

[3]Hattaway returned to work after losing the primary, and Hudson returned after losing the run-off election.

would be futile. Hutchins retained several deputy sheriffs who served under Compton and supported Hudson in the primary and runoff elections.[4] After the general election, however, Hutchins informed Brett, Hannah, Hattaway, and Hudson that they would no longer be employed as deputy sheriffs when he took office.[5] Hutchins concedes that his decision not to reappoint them was based on their speech and actions during the election.[6]

When Brett, Hannah, Hattaway, and Hudson were terminated from county employment, they were not informed of their right to continued coverage under the group health care plan. The county concedes that it was required to notify timely in writing the former deputy sheriffs of their rights to continued coverage upon payment of the proper premiums. The county, however, did not inform them that they were eligible for coverage, retroactive to the date of their termination, until after the former deputy sheriffs filed this action. Only Hudson chose to pay the premiums and continue the health insurance coverage.[7]

---

[4]Of those deputy sheriffs who supported Hudson and were retained, all but one posted Hutchins' campaign signs in their yards prior to the general election. The one deputy who supported Hudson but was reappointed without posting a campaign sign, however, lived in a remote location and actively campaigned for Hutchins in the general election.

[5]There is no dispute that the former deputy sheriffs were not afforded pre- or post-termination hearings. They filed grievances with the Board of Commissioners in accordance with the Jefferson County personnel policies and procedures. Hutchins did not attend the grievance proceeding and no action was taken by the Board.

[6]Hutchins denies that his decision not to reappoint the appellants was based solely on their opposition to his election. Rather, he contends that the speech and actions of Brett, Hannah, Hattaway, and Hudson during the campaign were disparaging and destructive. The allegations of negative campaigning and personal attacks on Hutchins, however, are disputed in the record. In addition, although Hutchins offers additional reasons, such as substance abuse and illegal activity, for his decision not to reappoint the former deputy sheriffs, the underlying facts are in dispute.

[7]Hudson claims that, because he developed a severe, chronic illness, he was unable to obtain insurance independently and that he had extensive medical costs during the period following his termination. He contends that he wrote the county approximately six months after his termination and requested information about extending his medical coverage. Because the county failed to inform him of his rights to extend his coverage and failed to respond to his letter, he asserts that he suffered stress and anxiety which exacerbated his illness.

The former deputy sheriffs filed this action and alleged that Jefferson County and Hutchins violated their rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution. They also sought fines and attorney's fees incurred when the county failed to offer, as required by 42 U.S.C. § 300bb-6, extended health care coverage after their employment termination. Jefferson County and Hutchins moved for summary judgment. The district court, in a deferred ruling, granted the motion for summary judgment because it determined that the former deputy sheriffs had no property rights in their jobs, which terminated automatically at the end of Compton's term, and that the county's delay in notifying them of their rights to extended health care coverage did not cause harm to the former deputy sheriffs. In view of its judgment on the substantive claims, the district court did not reach the issue of qualified immunity as raised by Hutchins. Brett, Hannah, Hattaway, and Hudson appeal the summary judgment.

## II. DISCUSSION

On appeal, the former deputy sheriffs argue that the district court erred in granting summary judgment because (1) their First Amendment rights were violated when they were denied reappointment because of political patronage, (2) they were entitled to procedural due process in view of their property interests in their jobs, and (3) they were entitled to fines and attorney's fees because they were injured by the delay in notification of their rights to continued health care coverage.[8] We review a grant of summary judgment *de novo* and view the facts in the light most favorable to the nonmoving party. *Jaques v. Kendrick,* 43 F.3d 628, 630 (11th Cir.1995). The movant is entitled to summary judgment only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *United States v. Route 2, Box 472, 136 Acres More or Less,* 60 F.3d 1523, 1526 (11th Cir.1995).

A. First Amendment Rights

---

[8]The former deputy sheriffs also argue that Hutchins was not entitled to qualified immunity because his failure to reappoint the deputy sheriffs violated clearly established constitutional rights. The district court did not address the qualified immunity issue and, because we remand to the district court for additional fact finding relevant to the First Amendment issue, we do not reach this issue here.

The district court opined that, because the term of the deputy sheriffs expired when Compton left office, Hutchins could have chosen not to reappoint them for any reason or for no reason at all. Upon finding that the newly elected sheriff had an absolute right to appoint whomever he chose, the district court did not scrutinize the former deputy sheriffs' First Amendment claim. The district court, however, was plainly in error. In *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court stated that

> even though a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in free speech.

*Id.* at 597, 92 S.Ct. at 2697. Furthermore, the Court noted that the principle applies to denials of public employment, not just terminations, and ruled that the lack of a contractual "right" to re-employment during the next academic year was immaterial to a college professor's free speech claim. *Id.* at 597-98, 92 S Ct. at 2697-98. Thus, in view of clear Supreme Court precedent, the district court erred in deciding that no First Amendment analysis was warranted because the former deputy sheriffs had no right to re-employment.

Although the parties recognize that Supreme Court precedent clearly establishes that Hutchins could not refuse to reappoint deputy sheriffs for unconstitutional reasons, they disagree on the proper analysis that the court should apply on remand.[9] Two related lines of cases have evolved—"those involving employee expression and those involving "raw political patronage.' " *Terry v. Cook,* 866 F.2d 373, 375 (11th Cir.1989). In cases involving employee expression, the balancing test stated in *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), requires the court to balance "the interest of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the

[9]Jefferson County and Hutchins argue that the deputy sheriffs should be barred from raising the First Amendment claims because they failed to apply for reappointment. Under *Terry v. Cook,* 866 F.2d 373 (11th Cir.1989), however, the failure to apply is irrelevant to a First Amendment claim if the application would have been futile. *Id.* at 379-79. The futility of any applications by the former deputy sheriffs is disputed in the record and, thus, cannot support the summary judgment. The finder of fact must make such a determination on remand.

efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734-35. In *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), the Supreme Court articulated the standard to be applied in political patronage cases: "[C]onditioning the retention of public employment on the employee's support of the in-party ... must further some vital government end by a means that is least restrictive of freedom of belief and association in achieving that end, and the benefit gained must outweigh the loss of constitutionally protected rights." *Id.* at 363, 96 S.Ct. at 2685. Conditioning employment on political patronage, however, may be constitutionally acceptable if the "hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1980). Both the *Pickering* and the *Elrod-Branti* tests are balancing tests. The *Elrod-Branti* test, however, "does not require open-ended inquiries into specific work-place relationships ... because the public employee's interests and the public employer's interests are essentially fixed and unvarying in the raw political patronage context." *Stough v. Gallagher,* 967 F.2d 1523, 1527 (11th Cir.1992).

The former deputy sheriffs argue that the *Elrod-Branti* test should apply. They contend that Hutchins failed to reappoint them solely because they did not support Hutchins in his campaign for sheriff.[10] Jefferson County and Hutchins, however, argue that the *Pickering* standard is appropriate because Hutchins chose not to reappoint the deputy sheriffs due to their negative campaigning and disparaging remarks.[11] Whether the former deputy sheriffs engaged in negative campaigning or made disparaging remarks is disputed in the record.

---

[10]We note that "[o]ur circuit has not limited political patronage cases strictly to those cases involving party affiliation, but has recognized that the *Elrod* /*Branti* analysis applies whenever public employment is "conditioned upon political allegiance and not upon the content of expression of political beliefs.' " *Morris v. Crow,* 117 F.3d 449, 456, (11th Cir.1997)(quoting *Terry,* 866 F.2d at 377).

[11]Jefferson County and Hutchins do not challenge the point that the speech of the former deputy sheriffs related to matters of public concern as it related to the election of the sheriff of Jefferson County.

The district court must decide on remand which balancing test to apply, *Pickering* or *Elrod-Branti*. Choosing the proper test, however, turns on certain predicate factual issues which are in dispute: the basis for Hutchins' failure to rehire Brett, Hannah, Hattaway, and Hudson and the nature of the political activity in which the former deputy sheriffs participated. Thus, we remand for additional fact finding so that the district court can decide which test properly to apply in the First Amendment analysis.[12]

B. Right to Procedural Due Process

No due process hearing was provided to Brett, Hannah, Hattaway, or Hudson upon Hutchins failure to reappoint them as deputy sheriffs. The former deputy sheriffs, thus, argue that they were denied their constitutional right to procedural due process. To establish such a claim, the former deputy sheriffs must show that they had a protected property interest in their employment. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). "State law determines whether a public employee has a property interest in his or her job." *Warren v. Crawford,* 927 F.2d 559, 562 (11th Cir.1991). Under Georgia law, a public employee generally has no protected property interest unless he or she is employed under a civil service system, which allows termination only for cause. *Id.*

The district court opined that the former deputy sheriffs had no protected property interest under Georgia law because Compton's efforts to place the deputy sheriffs under the civil service system failed to satisfy the statutory requirements of O.C.G.A. § 36-1-21(b). We agree. Sheriffs have statutory authority to appoint deputy sheriffs at their discretion. O.C.G.A. § 15-16-23. Section 36-1-21(b), however, provides a means for extending the civil service system to departments, like the Jefferson County Sheriff's Department, which are subject to the jurisdiction of elected county officers. Specifically, section 36-1-21(b) requires that (1) the elected county officer apply to the proper governing authority in writing for such an extension and (2) the governing authority formally

---

[12]Once the district court decides which test to apply, the qualified immunity issue also can be decided.

provide by ordinance or resolution that the positions be subject to the county civil service system. There is no evidence in the record that Compton made a written application to the Board of Commissioners; rather, the former deputy sheriffs allege that Compton made the request orally at a meeting of the Board. Thus, even if the Board passed the necessary resolution or ordinance,[13] the formal requirements of section 36-1-21(b) were not satisfied and the deputy sheriffs were not subject to the Jefferson County civil service system.

The former deputy sheriffs contend that, even if the statutory requirements were not satisfied, a *de facto* civil service system existed based on Compton's adoption and distribution of departmental rules and regulations that integrated by reference the county civil service system. While protected property interests in continued employment can arise from the policies and practices of an institution, *Perry,* 408 U.S. at 602-03, 92 S.Ct. at 2700, a property interest contrary to state law cannot arise by informal custom, *Warren,* 927 F.2d at 564. In the absence of satisfaction of the requirements of section 36-1-21(b), the deputy sheriffs were at-will employees with no protected property interest in continued employment. Thus, we affirm the summary judgment on the former deputy sheriffs' procedural due process claim.

C. Fines and Attorney's Fees

The former deputy sheriffs contend that the district court erred by denying their request for fines and attorney's fees based on Jefferson County's failure to comply with the Consolidated Omnibus Budget Reconciliation Act ("COBRA") notification requirements set forth in the Public Health Services Act ("PHSA"), 42 U.S.C. § 300bb-6. The COBRA amendments of the PHSA provide that state and local governments must offer to terminated public employees continued health plan coverage for a specified time following their termination. 42 U.S.C. § 300bb-1 to § 300bb-3. Furthermore, the PHSA requires that the plan administrator, within fourteen days of his notification

---

[13]The record is devoid of any evidence that the Board of Commissioners passed a formal resolution or ordinance to make the deputy sheriffs subject to the civil service system. The former deputy sheriffs, however, contend that the minutes of the meetings of the Board of Commissioners are not complete, and the parties acted as if the resolution or ordinance had been passed.

of the employee's termination, notify the terminated employee in writing of the employee's right to elect to continue the coverage. 42 U.S.C. § 300bb-6. The county failed to notify the former deputy sheriffs of their rights to continued coverage until after the former deputy sheriffs filed this action, at which time the county offered each former deputy sheriff the proper coverage. The former deputy sheriffs contend that they are entitled to fines and attorney's fees because 42 U.S.C. § 300bb-7 allows an individual who is aggrieved by the government's failure to comply with the requirements of the PHSA to "bring an action for appropriate equitable relief."

COBRA amended both the PHSA and the Employment Retirement Income Security Act ("ERISA") and included similar coverage and notification provisions in each act. *Williams v. New Castle County,* 970 F.2d 1260, 1264 (3d Cir.1992). The COBRA provisions of ERISA and PHSA represent parallel statutory schemes. ERISA, however, excludes public employees covered by government health plans from ERISA's employee benefit plan provisions, 29 U.S.C. § 1003(b)(1), whereas the PHSA applies only to such employees. The two acts can be further distinguished because ERISA provides broader relief to aggrieved private employees than the PHSA provides to similarly situated public employees. *Mansfield v. Chicago Park Dist. Group Plan,* 946 F.Supp. 586, 591 (N.D.Ill.1996). For example, ERISA not only provides for "appropriate equitable relief," 29 U.S.C. § 1132(a)(3), but also explicitly provides for the recovery of fines and attorney's fees, 29 U.S.C. §§ 1132(c) and (g). The PHSA contains no provisions regarding the recovery of fines or attorney's fees and instead limits relief to "appropriate equitable relief." 29 U.S.C. § 1003(b)(1). The former deputy sheriffs would have us read the phrase "appropriate equitable relief" in the COBRA provisions of the PHSA to include fines and attorney's fees. We decline to do so in view of Congress's decision that ERISA should provide more extensive remedies than the PHSA. Rather, we determine that the PHSA and ERISA, viewed together, show that Congress would have included provisions for fines and attorney's fees in the PHSA had it intended that such relief should be

9

available to public employees.[14] Thus, we affirm the district court's grant of summary judgment on the former deputy sheriffs' COBRA claim.[15]

### III. CONCLUSION

In this appeal of summary judgment, Brett, Hannah, Hattaway, and Hudson, former deputy sheriffs of Jefferson County, Georgia, contend that the county and Hutchins, as the newly elected sheriff, violated their constitutional rights by failing to reappoint them because of their political activities and by failing to provide pre- or post-termination hearings. They further contend that they are entitled to fines and attorney's fees since the county failed to timely notify them, as required by 42 U.S.C. § 300bb-6, of their right to continued health plan coverage. We determine that (1) because Hutchins could not refuse to reappoint the deputy sheriffs for unconstitutional reasons, the district court erred in failing to analyze the former deputy sheriffs' First Amendment claim, (2) under Georgia law, the former deputy sheriffs had no protected property interest in continued employment and were not entitled to procedural due process, and (3) the COBRA provisions of the PHSA, in contrast to the COBRA provisions of ERISA, provide only for "appropriate equitable relief" and not for the award of fines and attorney's fees. Thus, we AFFIRM the summary judgment on the due process claim and the COBRA claim but VACATE the summary judgment on the First Amendment claim and REMAND for further proceedings consistent with this opinion.

---

[14]Interpreting the term "appropriate equitable relief" narrowly to include those types of relief traditionally available at equity, like injunction, declaratory relief, and restitution, is consistent with the interpretation by the Supreme Court of the same phrase in ERISA. *See Mertens v. Hewitt Assocs.,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)(interpreting the relief available under 29 U.S.C. § 1132(a)(3)).

[15]Because we hold that fines and attorney's fees are not within the scope of "appropriate equitable relief" under the PHSA, we need not decide whether the former deputy sheriffs, and Hudson in particular, were injured by the county's failure to timely notify the former deputy sheriffs of their right to continued coverage.