[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10886
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 23, 2011
JOHN LEY
CLERK

D.C. Docket No. 1:09-cv-01371-TCB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

$688,670.42 SEIZED FROM REGIONS BANK
ACCOUNT NO. XXXXXX5028; AND
$49,603.68 SEIZED FROM REGIONS BANK
ACCOUNT NO. XXXXXX5955,

Defendants,

OMAR L. TOLEDO,
PCPS CORPORATION,

Claimants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 23, 2011)

Before TJOFLAT, CARNES and COX, Circuit Judges.

PER CURIAM:

Omar L. Toledo and PCPS Corporation ("PCPS") appeal the district court's grant of the Government's motion for summary judgment in its civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) and the district court's refusal to recognize PCPS as an innocent owner of the forfeited property. Toledo also contests the court's determination that he lacked standing to challenge the forfeiture. After thorough review, we affirm in part and reverse in part.

PCPS is a Florida-based check cashing business owned and operated by Beatriz Sardinas. PCPS processed checks issued to four medical services companies as payment for fraudulent Medicare claims. Jack Henry and Associates, a check clearing corporation, facilitated the processing of these checks into bank accounts in the name of NV Professional Services, Inc. ("NVPS"). Toledo, President of NVPS and Sardinas's spouse, agreed to allow these checks to be deposited into the accounts. The Federal Bureau of Investigation seized two of these accounts: Regions Bank account xxxxxx5540, which contained $49,603.68; and Regions Bank account xxxxxx5028, which contained $688,670.42. The Government claims the seized funds are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) because the accounts contain property involved in or traceable to a money laundering transaction and 18 U.S.C. § 981(a)(1)(C) as proceeds of unlawful activity.

Claimants raise three issues on appeal: whether Toledo established standing to contest the forfeiture of defendant property; whether the Government met its burden to show the property was subject to forfeiture under either § 981(a)(1)(A) or (C); and whether PCPS is an innocent owner of defendant property protected from forfeiture pursuant to 18 U.S.C. § 983(d). We review de novo the district court's grant of summary judgment, applying the same familiar standards as the district court. *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1273 (11th Cir. 2002) (citation omitted).

As an initial matter, we are considering what amounts to an unopposed motion for summary judgment. The district court deemed admitted all of the facts contained in the Government's Statement of Material Facts as to Which There Is No Dispute because the claimants failed to support their denials of some of these facts with citations to record evidence in violation of Northern District of Georgia Local Rule 56.1(B)(2). This court has recognized that when a non-moving party fails to comply with this local rule "the court has before it the functional analog of an unopposed motion for summary judgment." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Of course, the movant still bears the burden to show "that there is no genuine issue as to any material fact," Fed. R. Civ. P. 56(c), and the motion must be supported by the evidence submitted. *See United States v. One Piece of Real Prop. Located at*

3

*5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004) [hereinafter *One Piece of Real Prop.*].

Because standing is a threshold jurisdictional question, we address this issue first. A claimant disputing a civil forfeiture action must establish both the requirements of Article III standing and statutory standing. *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1543-44 (11th Cir. 1987). The district court found Toledo failed to carry this burden because he did not show he was a bailee of the funds and he lacked a sufficient ownership interest to establish standing. On appeal, Toledo contends that as the sole individual with signature authority over the accounts he has standing to contest their forfeiture. The Government argues that Toledo cannot meet the standing requirements because he fails to qualify as a bailee of the funds and was a mere nominee who exercised little dominion or control over the property.

We agree with the district court that Toledo failed to carry his burden to establish standing. The Article III standing inquiry focuses on the existence of an injury. *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006). Ownership of property may be evidence of the existence of an injury, but non-owners like bailees may also have a sufficient injury to establish standing. *Id.* To support his claim for constitutional standing, Toledo relies on his signature authority

4

for both Regions accounts. Toledo's signature authority does little to prove he had a possessory or ownership interest in the accounts. In fact, the Government presented evidence that monies in these accounts were actually paid out pursuant to instructions from Sardinas in the normal course of PCPS's business. (R.3-103, Ex. 1 at 7-8.) As we have said, "'straw owners' and persons who might have unknowingly been in possession of property that is seized do not necessarily suffer an injury that is sufficient to demonstrate standing." *Via Mat* at 1262 n.5 (citing *United States v. Cambio Exacto*, 166 F.3d 522, 527-28 (2d Cir. 1999)). Toledo's evidence failed to show he possessed a sufficient ownership interest in the property and did not establish a constitutional injury. The district court properly held he lacked Article III standing to contest the forfeiture of the bank accounts making it unnecessary for us to resolve whether he had statutory standing. Thus, we affirm the dismissal of Toledo from this action and turn to the merits of the forfeiture.

In a civil forfeiture action, the burden of proof is on the Government to establish that the property is subject to forfeiture. 18 U.S.C. § 983(c)(1). Here, its complaint for forfeiture proceeds on two theories. The Government contends the accounts are forfeitable under both 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C). The district court order does not specify which statute it relied upon in granting summary judgment. Yet, the two statutes differ in significant respects.

5

Section 981(a)(1)(A) provides for forfeiture of property involved in money laundering transactions, while § 981(a)(1)(C) allows forfeiture of the proceeds of a wide range of unlawful activities. Under § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of section . . . 1957 . . . of this title, or any property traceable to such property" is subject to forfeiture. 18 U.S.C. § 981(a)(1)(A). Section 981(a)(1)(C) permits forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section . . . 1028, . . . of this title or any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense." 18 U.S.C. § 981(a)(1)(C). Specified unlawful activity includes violations of § 1341 (pursuant to § 1956(c)(7)(A)), § 1343 (pursuant to § 1956(c)(7)(A)), and health care fraud (pursuant to § 1956(c)(7)(F)).

We agree with the district court that the Government has carried its burden to show these bank accounts contain property derived from proceeds traceable to a violation of one of the enumerated sections in § 981(a)(1)(C). We also agree that the claimants' argument that they no longer hold unlawful proceeds because they cashed the fraudulently obtained checks lacks merit. The Government has shown, and the claimants do not dispute, that PCPS processed checks obtained as part of schemes to defraud the Medicare program. Violations of §§ 1028, 1341, 1343, and 1347

6

occurred as part of these schemes. There is no dispute that fraudulently obtained checks from these schemes totaling $220,721.15 were deposited in Regions account xxxxxx5028. The Government also has shown fraudulently obtained checks totaling over $130,000.00 were deposited into a Wachovia Bank account in the name of NVPS before those funds were transferred to Regions account xxxxxx5540.

The Government's theory breaks down, however, when it seeks forfeiture of the entire balance of these two Regions accounts based on § 981(a)(1)(C). The statute states explicitly that the only property forfeitable under the section is property "which constitutes or is derived from proceeds traceable to [a violation of one of the enumerated sections]." Section 981(a)(2)(A) defines proceeds: "In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." Here, applying § 981(a)(1)(C), the offenses giving rise to forfeiture are those that occurred as part of the Medicare fraud schemes. The proceeds of those violations consist only of the amount of the fraudulent checks the government has traced to the Regions accounts. We have not said that the proceeds forfeiture envisioned by § 981(a)(1)(C) amounts to forfeiture of any property

commingled with the illegal proceeds. Thus, to the extent the district court relied on § 981(a)(1)(C) in granting the Government's motion to forfeit the entire balance of the accounts, it was in error. Section 981(a)(1)(C) only permits forfeiture of the proceeds of the Medicare fraud schemes.

We now consider whether summary judgment was proper under § 981(a)(1)(A). This subsection allows forfeiture of property "involved in" a transaction in violation of 18 U.S.C. § 1957. A violation of § 1957 occurs when one "knowingly engaged or attempted to engage in a monetary transaction in criminally derived property that is of value greater than $10,000 and is derived from specified unlawful activity.' A 'monetary transaction' includes 'the deposit, withdrawal, transfer, or exchange, . . . of funds or a monetary instrument by, through, or to a financial institution . . . ." *United States v. Johnson*, 440 F.3d 1286, 1289 (11th Cir. 2006) (alteration in original) (citations omitted) (internal quotation marks omitted). The term "specified unlawful activity" is defined according to § 1956(c)(7).

As discussed above, the Government has shown the checks procured from the Medicare fraud were derived from "specified unlawful activity" as defined in § 1956(c)(7). Many of the criminally derived checks from Medicare at issue in this case exceeded $10,000. Finally, a monetary transaction involving these checks

8

occurred when they were deposited into the Regions and Wachovia accounts respectively.

However, an offense under § 1957 also requires that Sardinas, acting on behalf of PCPS,[1] knew she was engaging in a monetary transaction in criminally derived property. The Government's motion highlights that Sardinas knew about check cashing schemes in South Florida and that Medicare checks had a high indicia of fraud. The value of the fraudulent Medicare checks exceeded the value of those checks typically cashed by her business. PCPS also deposited the checks into the bank account of a third party, misstated the business purpose of those accounts, and failed to investigate possible red flags on the checks. The Government suggests this evidence proves Sardinas knew or was willfully blind to the source of the checks.

But, the exhibits attached in support of the Government's motion,[2] also contain evidence that Sardinas did not know the checks processed by PCPS were criminally derived. For example, Toledo testified that Sardinas never instructed him to put

---

[1] "Knowledge of an illegal activity may be attributed to a corporation only when the knowledge was obtained by an agent acting within the scope of his or her employment and for the benefit of the corporation." *United States v. Route 2, Box 472, 136 Acres More or Less*, 60 F.3d 1523, 1527 (11th Cir. 1995). No one disputes Sardinas was acting within the scope of her employment with PCPS in this case.

[2] Even though this court is considering what amounts to an unopposed motion for summary judgment, we still must consider the merits of the motion. *One Piece of Real Prop.*, 363 F.3d at 1101. In so doing, we review the materials submitted by the United States in support of its motion. *Id.* at 1102 n.4.

fraudulently obtained funds from Medicare into NVPS's accounts. (R.3-103, Ex. 2 at19.) He also stated Sardinas never asked him to launder funds from Medicare, (*id.* at 21), and that Sardinas does not operate multiple businesses to launder the proceeds of unlawful activity. (*Id.* at 30.) Furthermore, the Government admits that PCPS's typical monthly volume of checks transacted approached $1 million. (R.3-103 at 33.)

We are wary of resolving the issue of Sardinas's knowledge regarding the source of the checks PCPS processed at the summary judgment stage especially when the Government presented no direct evidence that Sardinas knew the checks processed by PCPS were criminally derived. *See Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1476 (11th Cir. 1991) ("As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." (citing *Morissette v. United States*, 342 U.S. 246, 274, 72 S. Ct. 240, 255 (1952))); *Overstreet v. Ky. Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991) ("Where states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979))). In essence, the Government asks the court to infer from Sardinas's general knowledge about fraudulent activities in Florida a specific knowledge of fraud in this case. But on summary judgment, we draw inferences in favor of the non-moving party, Sardinas. *Cast Steel Prods., Inc. v.*

10

*Admiral Ins. Co.*, 348 F.3d 1298, 1301 (11th Cir. 2003) ("We 'view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.'" (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir.1999)). A reasonable jury might be unwilling to attribute Sardinas's general knowledge of fraudulent schemes in Florida to a specific knowledge that the checks at issue in this case were fraudulent, or a juror might conclude the volume of checks processed by PCPS precluded any specific knowledge about these checks. Alternatively, a reasonable juror could decide to give weight to Toledo's testimony. These other explanations raise a genuine issue of material fact regarding Sardinas's knowledge that the Medicare checks were fraudulent. Because the evidence at the summary judgment stage does not prove a § 1957 violation by PCPS,[3] the Government may not rely on the § 981(a)(1)(A) forfeiture provision.

Without the benefit of § 981(a)(1)(A), forfeiture of the entire balance of the Regions accounts was not proper. This court has interpreted "involved in" in 18

---

[3] Neither the Government's brief, its motion for summary judgment, nor the district court's order make clear whether forfeiture under § 981(a)(1)(A) was based on PCPS committing a § 1957 money laundering transaction or whether forfeiture was based on a money laundering transaction by the Medicare fraudsters. Because the Government's motion focused most on showing that PCPS was involved in a § 1957 violation, (R.3-103 at 22), we do not decide whether the money was forfeitable under § 981(a)(1)(A) based on money laundering violations by the Medicare fraudsters.

U.S.C. § 982(a)(1), which contains language nearly identical to § 981(a)(1)(A),[4] to allow forfeiture of not only the money which was actually laundered but also property used to facilitate the laundering offense. *United States v. Seher*, 562 F.3d 1344, 1368 (11th Cir. 2009). This "involved in" language does not appear in § 981(a)(1)(C), and we uphold the district court's grant of summary judgment only as to the § 981(a)(1)(C) forfeiture. Section 981(a)(1)(C) confines the forfeiture to the proceeds of unlawful activity. Here, the Government has traced $220,721.15 of unlawful proceeds into Regions account xxxxxx5028 and $130,000.00 into Regions account xxxxxx5540. Because the Government has not shown the entire balance of Regions account xxxxxx5028 contains the proceeds of unlawful activity, the entire account may not be forfeited using § 981(a)(1)(C).

We agree with the district court that PCPS failed to carry its burden of proving it was an innocent owner of the property in the Regions accounts. 18 U.S.C. § 983(d) states that an innocent owner's property "shall not be forfeited under any civil forfeiture statute." 18 U.S.C. § 983(d)(1). The statute also places the burden of

---

[4] *Compare* 18 U.S.C. § 981(a)(1)(A) ("The following property is subject to forfeiture to the United States: (A) Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."), *with* 18 U.S.C. § 982(a)(1) ("The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.")

12

proving this defense by a preponderance of the evidence on the claimant. *Id.* The standard for satisfying the innocent owner defense depends on whether the property interest existed at the time of the illegal activity. *Compare* 18 U.S.C. § 983(d)(2)(A), *with* 18 U.S.C. § 983(d)(3)(A). We find it unnecessary to resolve at this stage of the case whether § 983(d)(2)(A) or § 983(d)(3)(A) applies. In either case PCPS did not discharge its burden on this defense because it failed to cite to any evidence to support the defense.[5]

The district court correctly found Toledo lacked standing to contest the forfeiture action and that PCPS failed to carry its burden to qualify as an innocent owner and we affirm those conclusions. We also affirm the district court's grant of summary judgment to the Government in so far as it rested upon § 981(a)(1)(C), but we reverse its decision to the extent it rested upon § 981(a)(1)(A).

AFFIRMED IN PART, REVERSED IN PART.

---

[5] In the district court, the Government argued that PCPS failed under the test established in § 983(d)(2)(A), which applies to owners who have a property interest at the time of the illegal conduct giving rise to forfeiture. The district court, however, applied § 983(d)(3)(A), which applies to owners who acquire a property interest after the illegal conduct giving rise to forfeiture.